UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON E. VIRAMONTES, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>PFIZER, INC.,<br><br>  Defendant. | No. 2:15-cv-1754 TLN AC (PS)<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

   This is a removed diversity action alleging strict products liability, negligence and loss of consortium. Defendant moves to dismiss, arguing the action is barred by the statute of limitations, collateral estoppel and res judicata.

   For the reasons set forth below, the undersigned will recommend that defendant's motion to dismiss be denied. The court will also recommend denial of defendant's request, made at the hearing on the motion, to convert its motion into a summary judgment motion, since defendant has not met its burden on summary judgment, and there would accordingly be no point in requesting a response from plaintiff. However, there is a substantial factual question looming over this case that can possibly be resolved by summary judgment: assuming plaintiff's use of Celebrex caused her dermatomyositis, did she have reason to know this no later than November 21, 2012, or thereabouts? Accordingly, defendant's motions should be denied without prejudice to its filing of a summary judgment motion on any of the issues addressed here.

1

## I. THE COMPLAINT

According to the complaint, defendant Pfizer, Inc. makes and sells the drug Celebrex. Complaint (ECF No. 1-1 Exh. A) ¶ 3. Plaintiff Sharon Viramontes ("plaintiff") starting taking Celebrex on May 13, 2002 on the advice of her doctor. Id. ¶ 4. Defendant was negligent in making and selling Celebrex, a drug that was "dangerous and unsafe for its intended uses." Id. ¶¶ 6-7. Plaintiff suffered injuries from taking Celebrex. Id. ¶ 8. Plaintiff Edward Viramontes, plaintiff's spouse, suffered a loss of consortium as a result of plaintiff's injuries. Id. ¶¶ 12-14. Plaintiffs seek compensatory and punitive damages and lost wages, alleging (1) negligence, (2) strict products liability, and (3) loss of consortium.

## II. DISMISSAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing

1   Twombly, 550 U.S. at 555-56), construe those allegations in the light most favorable to the
2   plaintiff, Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th
3   Cir. 2010) (citing Twombly, 550 U.S. 544), cert. denied, 131 S. Ct. 3055 (2011), and resolve all
4   doubts in the plaintiffs' favor.  Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010) (citing Hospital
5   Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738 (1976)).  The court need not accept as true,
6   legal conclusions "cast in the form of factual allegations."  Western Mining Council v. Watt, 643
7   F.2d 618, 624 (9th Cir. 1981).

8       Moreover, pro se pleadings are held to a less stringent standard than those drafted by
9   lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  A motion to dismiss for failure to state a
10  claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts
11  in support of the claim that would entitle him to relief.  See Cook v. Brewer, 637 F.3d 1002, 1004
12  (9th Cir. 2011).

13      These same standards apply when defendant moves to dismiss based upon an affirmative
14  defense.[1]

> Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint.  If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper.

19  ASARCO, LLC v. Union Pacific R. Co.. 765 F.3d 999, 1004 (9th Cir. 2014) (citations omitted);
20  see also, Jones v. Bock, 549 U.S. 199, 215 (2007) ("[w]hether a particular ground for opposing a
21  claim may be the basis for dismissal for failure to state a claim depends on whether the
22  allegations in the complaint suffice to establish that ground").

23      Motions to dismiss based upon the statute of limitations are, like such motions based upon
24  any affirmative defense, subject to the same rules.  This is true here, where the timeliness of the

---

[1] Defendant's motions are based upon affirmative defenses.  See Fed. R. Civ. P. 8(c)(1) ("estoppel," "res judicata" and "statute of limitations" are among the affirmative defenses); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350 (1971) ("[r]es judicata and collateral estoppel are affirmative defenses that must be pleaded").

1  complaint relies upon the limitations period being tolled until plaintiff reasonably discovers the
2  claim.

> A motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.

Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980); Von Saher, 592 F.3d at 969.

### III.  REQUESTS FOR JUDICIAL NOTICE

The parties have requested that the court take judicial notice of several documents. See ECF No. 6-2 (defendant), 13 (plaintiff). This court must, upon request, take judicial notice of any "fact" that is "not subject to reasonable dispute." Fed. R. Evid. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known," or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Civ. P. 201(1), (2); United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003). Judicially noticed facts may be considered on a dismissal motion under Rule 12(b)(6). See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) ("[o]n a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings").

A.  Defendant's Requests

Defendant requests judicial notice of four documents that are part of the public records of the California state courts. The documents, attached as exhibits to defendant's request, are:

1. Exh. A – Complaint in Viramontes v. Pfizer, 05AS00103 (Sacramento County Superior Court January 10, 2005).

2. Exh. B – First Amended Complaint in Viramontes v. Pfizer, Inc., 05AS00103 (Sacramento County Superior Court August 4, 2005).

3. Exh. C – Summary Judgment Order in Viramontes v. Pfizer, Inc., 05AS00103 (Sacramento County Superior Court December 12, 2006).

4

1    4. Exh. D – Court of Appeal Decision in Viramontes v. Pfizer, Inc., C054674 (3rd
2 Dist. June 20, 2008).

3 Defendant relies upon these documents in arguing that the current lawsuit is barred by
4 collateral estoppel, res judicata and the statute of limitations. They are proper subjects of judicial
5 notice. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d
6 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts, both within and
7 without the federal judicial system, if those proceedings have a direct relation to matters at issue")
8 (internal quotation marks omitted). Accordingly, the request for judicial notice of these
9 documents is GRANTED.

10 Defendant also requests judicial notice of a document headlined "LexisNexis | Accurint®
11 for Legal Professionals," which purports to be "Marriage Divorce Search Results," and which is
12 attached to the request as Exhibit E. This document is intended to show that plaintiffs were
13 married and therefore in "privity" with each other at the time the first lawsuit was filed.
14 However, apart from defendant's description of the document as a "Public Record Report,"
15 defendant provides no information that would enable this court to conclude that this is a public
16 record (or a report thereof), or to be confident of the facts stated in the document.[2] Accordingly,
17 the request for judicial notice of this document is DENIED, without prejudice.

18    B. Plaintiffs' Requests

19 Plaintiffs request that the court take judicial notice of the July 18, 2013 "Qualified
20 Medical Evaluation Supplemental Report," authored by Ira Fishman, M.D. See Plaintiffs'
21 Request for Judicial Notice ("Plaintiffs' RfJN") (ECF No. 13) at 46-53 (Exh. D). More
22 specifically, plaintiff wants the court to take judicial notice of the "fact" that she first became
23 aware that Celebrex caused her dermatomyositis on or after Dr. Fishman disclosed it in that July
24 18, 2013 report. See Complaint ¶ 8 at 10 ("On 7-18-2013, A QME, Ira Fishman's report
25 confirmed with the following statement that I had developed **Dermatomyositis** from the

---

[2] Defendant is not particularly accurate in describing this document as "'Accurint' Marriage/Divorce Public Record Report." See ECF No. 6-2 at 4. The words "Public Record Report" does not appear anywhere on this document.

industrial use of **Celebrex**") (emphasis in text).

Defendant offers no objection to the request to take judicial notice of this document.[3] Accordingly, the court GRANTS plaintiffs' motion to take judicial notice of the fact that Dr. Fishman authored Exhibit D, that he diagnosed plaintiff with dermatomyositis, and that he opined on the connection between dermatomyositis and Celebrex. However, there is nothing in the document that indicates that this was the first time that plaintiff became aware of the dermatomyositis or its connection to Celebrex. Accordingly, the court does *not* take judicial notice of the purported fact that this was the first time plaintiff was aware of that diagnosis or that connection.

Plaintiff requests that the court take judicial notice of the November 21, 2012 "Consultation Report," also authored by Dr. Fishman. See Plaintiffs' RfJN at 9-42 (Exh. B). The reason plaintiff asks for judicial notice of this document is unknown, as she made no reference to it in her complaint or at the hearing on this motion. However, defendant does not object to taking judicial notice of it. To the contrary, defendant adopts the document, and asserts that it supports the purported "facts" that (1) that dermatomyositis is the same disease that plaintiff sued over in 2005, (2) plaintiff knew she had "dermatomyositis" itself in 2010, based on an October 19, 2010 diagnosis by Dr. David Knepler, and (3) plaintiff knew she had dermatomyositis by November 21, 2012, the date of Dr. Fishman's first report.

Since neither side disputes the fact that Dr. Fishman authored this document, nor does either side dispute that the report says what it says (as opposed to their interpretations of what it means or proves), the court GRANTS Plaintiffs' request to take judicial notice of this document. However, the court does not take judicial notice of any of the purported "facts" that defendant asserts are revealed by those documents.

Plaintiffs' remaining requests for judicial notice are for documents that have no apparent

---

[3] In any event, judicial notice is not required for the court to consider this document. The document is referenced in plaintiffs' complaint, attached to their Request for Judicial Notice as part of their claim that the statute of limitations is tolled, and its authenticity is not questioned by any party. Therefore, the document is "incorporated by reference" into the complaint. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

6

bearing on this motion.  Accordingly, the request is DENIED as to those documents.

## III.  ANALYSIS

### A.  Statute of Limitations

"In a federal diversity action brought under state law, the state statute of limitations controls."  Bancorp Leasing and Financial Corp. v. Agusta Aviation Corp., 813 F.2d 272, 274 (9th Cir. 1987).  Plaintiff argues that the statute of limitations applicable to this case is Cal. Civ. Proc. Code § 335.1, which provides a two-year statute of limitations.[4]  "Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action."  Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) (citing Cal. Civ. Proc. Code § 312).  Under the "general rule," the limitations period begins to run "when the cause of action is complete with all of its elements."  Id. (citing Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal. 3d 176, 187 (1971) ("[i]n ordinary tort and contract actions, the statute of limitations, it is true, begins to run upon the occurrence of the last element essential to the cause of action")).  Under the delayed discovery rule however,

> a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action. In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis.

Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 803 (2005).[5]  Defendant's entire argument

---

[4] It appears that the applicable statute of limitations is actually Cal. Civ. Proc. Code § 340.8(a), which governs civil actions "for injury or illness based upon exposure to a hazardous material or toxic substance."  See Nelson v. Indevus Pharmaceuticals, Inc., 142 Cal. App. 4th 1202, 1208-09 (2nd Dist. 2006) (Section 340.8(a) applies to exposure to prescription drugs, rejecting the argument that it applies only to environmental hazards).  However, both statutes impose a two year limitations period, both are subject to the discovery rule, discussed below, and there appears to be no substantive difference in the operation of these two statutes, at least as far as this motion is concerned.

[5] Under Section 340.8(a), the statute is tolled until "plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later."

1  here is based upon (1) its "first injury" argument, and (2) its view of Dr. Fishman's November 10,
2  2012 report (Exhibit B to the Plaintiffs' Request for Judicial Notice).

### 1. First injury

Defendant argues that "[u]nder California's 'first injury' approach, the limitation period begins to run on *all* of a plaintiffs personal injury claims from the date she discovers her first injury." Defendant's Memorandum ("Motion") (ECF No. 6-1) at 10 (emphasis added), citing Miller v. Lakeside Village Condominium Ass'n, 1 Cal. App. 4th 1611, 1622 (2nd Dist. 1991). Having taken judicial notice of plaintiff's first lawsuit, the court agrees that there is no dispute that plaintiff experienced her "first injury" from taking Celebrex no later than January 10, 2005. On that date, plaintiff filed a complaint in California County Superior Court alleging that she had been injured by taking Celebrex (as well as Bextra, a drug that is not involved in this lawsuit).

However, defendant's argument is precluded by Pooshs v. Philip Morris USA, Inc., 51 Cal. 4th 788, 792 (2011), which found an exception to the Miller rule under such facts as are alleged in this case. In Pooshs, plaintiff, a cigarette smoker for 35 years, filed her products liability and negligence lawsuit against a cigarette maker in 2003, "less than a year after she was diagnosed with lung cancer." Pooshs, 51 Cal. 4th at 793 (the applicable limitations period was one year). However, it was not filed within a year of her first injury from cigarette smoking. To the contrary, she experienced her first injury in 1989, when "she was diagnosed with chronic obstructive pulmonary disease (COPD), which plaintiff knew was caused by her smoking habit." Id. at 791. Her second injury from smoking came in 1990 or 1991, when "plaintiff was diagnosed with periodontal disease, which she knew was caused by her smoking habit." Id.

Pooshs held that notwithstanding the rule of Miller, plaintiff's lawsuit – filed 14 years after her first injury, and well outside the statute of limitations if it had started running then – was not barred. Specifically, the court held as follows:

> We hold that two physical injuries – both caused by the same tobacco use over the same period of time – can, in some circumstances, be considered "qualitatively different" for purposes of determining when the applicable statute of limitations period begins to run. Specifically, when a later-discovered disease is separate and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of limitations for a lawsuit based

|   |   |
|---|---|
| 1 | on the later disease. . . . We limit our holding to latent disease cases, without deciding whether the same rule should apply in other contexts. |
| 2 |   |

Pooshs, 51 Cal. 4th at 792 (footnote and citation omitted).[6]

Reading plaintiffs' pro se complaint liberally, and drawing all reasonable inferences in her favor, as the court must on this Rule 12(b)(6) motion, plaintiff is alleging that her dermatomyositis is a latent disease which is "separate and distinct" from the severe arthritis, leuko lymphopenia, and drug induced lupus that she was first diagnosed with. This case is therefore governed by Pooshs. Accepting the allegations of the complaint, and drawing all inferences in plaintiffs' favor, the statute of limitations began to run on plaintiffs' claim that Celebrex caused her to develop dermatomyositis, on July 18, 2013.[7] This lawsuit was filed within two years of that date.

### 2. Prior diagnoses

Defendant's remaining arguments are premised on factual attacks on plaintiffs' allegation that the dermatomyositis is a separate and distinct disease from anything plaintiff had been diagnosed with before, and that she first learned that she had this disease on July 18, 2013. In a Rule 12(b)(6) motion, the court may reject allegations of the complaint that contradict matters properly subject to judicial notice or by exhibit. Sprewell v. Golden State Warriors, 266 F.3d

---

[6] Regarding Miller, the California Supreme Court said: "[Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623 (2007)] logically supports the recognition of an exception to the rule that 'a single tort can be the foundation of but one claim for damages.' (Miller v. Lakeside Village Condominium Assn. (1991) 1 Cal. App. 4th 1611, 1622 . . .) Because the exception is inferred from Grisham's holding, it is necessarily limited to cases presenting the same legal and factual situation, that is, a statute of limitations defense to a claim alleging a latent disease that is separate and distinct from, and becomes manifest long after, the initial effects of the plaintiff's injury." Pooshs, 51 Cal. 4th at 800 n.6.

[7] In contrast, the plaintiff in Miller waited until the limitations period had expired before suing over the *one* disease that she had developed from her exposure to mold, namely, "immune dysregulation." Miller, 1 Cal. App. 4th at 1624-25. The court rejected plaintiff's assertion that this was a different disease than what she had experience before. Id. at 1623. The fact that this one disease had previously been misdiagnosed as allergies and asthma, did not stop the statute of limitations from running. Id at 1629. Moreover, during the period the statute of limitations was still running, plaintiff suffered "most, if not all, of the harm caused by the mold," namely, asthma attacks, blurred vision, numbness, forgetfulness and confusion. Miller, 1 Cal. App. 4th at 1618.

979, 988 (9th Cir. 2001) (citing Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987)).

### a. 2003 diagnosis

Defendant argues that plaintiff was first diagnosed with her *current* complaint in 2003, even if it was given a different name, and therefore the statute of limitations began to run then. In support, defendant identifies a passage in Dr. Fishman's 2012 report in which, according to defendant, Dr. Fishman states that he concurs with the diagnosis of a "Dr. Kneapler" [aka "Dr. David Knepler"], that plaintiff's current dermatomyositis is actually the same "autoimmune process manifesting with severe skin rash, proximal muscle weakness and muscle atrophy" that plaintiff suffered from in 2003. See Plaintiffs' RfJN at 26 (Exh. B).

Even assuming that defendant is correctly interpreting Dr. Fishman's words, this is plainly not a fact that is beyond reasonable dispute. While it may be beyond reasonable dispute that this is what Dr. Fishman *said*, it is not beyond reasonable dispute that it is *true*.[8] To the contrary, by its nature, this interpretation is a medical opinion, and at this point, the court has no way of knowing whether it is correct or not.

### b. October 19, 2010 diagnosis

Defendant identifies a passage in Dr. Fishman's "Medical Record Review," in which he indicates that in reviewing the notes of "Dr. David Knepler," he found that Dr. Knepler had diagnosed plaintiff with "Idiopathic dermatomyositis" on October 19, 2010. See Plaintiffs' RfJN at 21 (entry for "10/19/10"). Once again, there appears to be no dispute that Dr. Fishman wrote what he wrote. However, the court cannot say, beyond reasonable dispute, that: (1) Dr.

---

[8] It is a familiar concept that a document can be admitted into evidence solely to prove that a particular thing was said, but not to prove that the utterance is true. See, e.g., Von Saher, 592 F.3d at 960 ("[c]ourts may take judicial notice of publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"). Moreover, it is not entirely clear that this is even what Dr. Fishman was saying: "the applicant in the beginning of 2003 developed the acute onset of an autoimmune process manifesting with severe skin rash, proximal muscle weakness and muscle atrophy. . . . In that era, a diagnosis of dermatomyositis was not made but was subsequently made retrospectively by Dr. Kneapler and I concur with his diagnosis."

1  Fishman's review and interpretation of Dr. Knepler's records is accurate;[9] (2) Dr. Knepler's
2  diagnosis was correct; (3) Dr. Knepler's diagnosis was connected to plaintiff's use of Celebrex; or
3  (4) Dr. Knepler's views were communicated to plaintiff.  In other words, an issue as complex as
4  the fact and timing of a medical diagnosis cannot be settled beyond dispute on this Rule 12(b)(6)
5  motion simply by referring to a judicially noticed document in which one doctor summarizes the
6  diagnosis of another doctor.

   c.  November 21, 2012 diagnosis

   Defendant identifies a passage in Exhibit B that, if communicated to plaintiff at the time, would tend to show that she had "reason to suspect" as of November 21, 2012, that Celebrex had caused her dermatomyositis.  In his Conclusions, Dr. Fishman states:

> Certainly there is no medical certainty here but the facts are sufficient, buttressed by the medical literature, to conclude with reasonable medical probability that the applicant's dermatomyositis was linked to chronic industrial use of Celebrex.

Plaintiffs' RfJN at 28.  Defendant's difficulty here is that the report is addressed only to "Ms. Susan Isenman" at the "State Compensation Insurance Fund."  Plaintiffs' RfJN at 9.  The report contains no indication that it was sent to plaintiff (or to any other person).

To the contrary, in her complaint, plaintiff indicates that she first found out about her development of dermatomyositis and its connection to her use of Celebrex from Dr. Fishman's July 18, 2013 "Qualified Medical Evaluation Supplemental Report," P-RfJN at 46-53.  Complaint ¶ 8 at 10.  Drawing all reasonable inferences in favor of plaintiff, the court must infer that plaintiff was not aware of the November 21, 2010 dermatomyositis diagnosis and its connection to Celebrex until July 18, 2013.[10]

At the hearing on this motion, defendant correctly argued that the court need not draw unreasonable inferences, and need not accept conclusory allegations of the complaint.  However,

---

[9] No party has provided Dr. Knepler's records.
[10] At the hearing on this matter, defendant never asserted that the November 21, 2010 report was communicated to plaintiff, or otherwise known by her, nor did defendant offer anything the court could look at on this motion that would support such an assertion.

11

1 there is nothing conclusory or unreasonable about plaintiffs' allegation that they first learned that

2 plaintiff had dermatomyositis on July 18, 2013.

### B. Collateral Estoppel ("Issue Preclusion")

Defendant argues that the complaint should be dismissed "because each claim is barred by collateral estoppel." Motion (ECF No. 6-1) at 4.

#### 1. The law

Because this is a diversity case, the court applies "the collateral estoppel rules of the forum state." Pardo v. Olson & Sons, Inc., 40 F.3d 1063, 1066 (9th Cir. 1994).

> "Collateral estoppel precludes relitigation of *issues* argued and decided in prior proceedings. . . . Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."

Hernandez v. City of Pomona, 46 Cal. 4th 501, 511 (2009) (emphasis added) (quoting Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990), cert. denied, 500 U.S. 920 (1991)).

#### 2. The facts

##### a. The first-filed lawsuit

In her first-filed lawsuit, plaintiff alleged that on May 13, 2002, she first took Celebrex, after her doctor gave it to her. ECF No. 6-4 at 10 ¶ 1. She believed the drug was safe, as she received no warnings of any side effects. Id. Plaintiff stopped taking Celebrex after a week because it gave her gas. Id. She was prescribed Celebrex again on January 9, 2003, and took it until April 10, 2003, when a doctor told her that she was having an allergic reaction to it. Id.

Since then, and as a direct result of taking Celebrex (and defendant's failure to warn of the dangers), plaintiff has suffered from "severe arthritis," "leuko lymphopenia," and "drug induced lupus." ECF No. 6-4 at 11 ¶ 1.[11]

---

[11] She has suffered from the following symptoms: "hair loss, inability to hold her head up, (continued…)

12

1    Plaintiff sued defendant on August 4, 2005 in Sacramento Superior Court. ECF No. 6-4.
2 The complaint asserted two claims, namely, strict products liability and negligence. Id. The
3 products liability claim alleged that Celebrex, which was manufactured and sold by defendant,
4 was defective and unreasonably dangerous "to an extent beyond that which would be
5 contemplated by the ordinary consumer [who] purchases or uses the product." Id. at 14 ¶ 13.
6 Defendant failed to conduct appropriate testing of Celebrex, failed to warn the public of the
7 dangers of Celebrex and refused to design a safer drug. Id. ¶¶ 4-7. The negligence claim also
8 alleged that defendant failed to warn plaintiff of the drug's severe side-effects. Id. at 12 ¶ 5-7.
9 The complaint alleges that plaintiff suffered the above injuries as a direct result of taking
10 Celebrex, and defendant's failure to warn. Id. at 14 ¶ 14 [incorrectly numbered "11"].

11    Defendant moved for summary judgment in the first-filed lawsuit. See Superior Court
12 Decision (ECF No. 6-5) at 4. The basis for the motion was that "plaintiff cannot show that the
13 drugs were the cause of her injuries." Id. The Superior Court determined that "In a personal
14 injury action causation must be proven within a reasonable medical probability based upon
15 competent expert testimony." Id. It then granted defendant's motion on the ground that plaintiff
16 "failed to offer any expert testimony on causation of her personal injuries." Id. at 5.

17    Thus, of all the issues potentially involved in claims for products liability and negligence,
18 the lawsuit was dismissed based upon the adjudication of only one issue, namely, causation. ECF
19 No. 6-6. The Court of Appeal affirmed on June 20, 2008, noting that "[t]he only element at issue
20 in this appeal is causation." Id. at 8.[12]

21    b. The current lawsuit

22    Plaintiff and her husband ("plaintiffs") filed the current lawsuit on July 17, 2015. ECF

---

inability to turn her neck, full body swelling, a rapid heart beat, swollen lymph nodes, sores all over body and inside the mouth, a fiery heat rash all over body, severe internal itching, chills, sore lumpy breast, severe muscle pain, atrophy, fatigue, vertigo, severe muscle loss in buttocks and entire body, allergy sensitivities, and nightmares." ECF No. 6-4 at 11 ¶ 1 & 14 ¶ 14 [incorrectly numbered ¶ "11"].

[12] "Causation" is an element of both negligence and strict products liability. See Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP, 59 Cal. 4th 568, 573 (2014) (negligence); O'Neil v. Crane Co., 53 Cal. 4th 335, 347 (2012) (strict product liability).

1 No. 1-1. Like the first complaint, this complaint alleges that plaintiff first took Celebrex on May

2 13, 2002 on the advice of her physician. It similarly alleges that defendant negligently

3 manufactured Celebrex and negligently failed to warn of its dangers. Id. at 7 ¶¶ 6-7. In this

4 complaint, however, plaintiffs allege that as a direct and proximate cause of this negligence,

5 plaintiff developed "dermatomyositis ('a rare inflammatory muscle disease')." Id. at 7-8 ¶ 8.

6 Reading the pro se complaint liberally, it alleges that this disease is entirely separate and distinct

7 from the severe arthritis, leuko lymphopenia, and drug induced lupus that plaintiff alleged in the

8 first lawsuit.[13] Plaintiff first learned that she had dermatomyositis on July 18, 2013. Id. at 10 ¶ 8.

   c. Analysis

10   Defendant argues that the California courts have already ruled against plaintiff on the

11 issue of "causation." Plaintiffs do not directly address this issue in their opposition. However,

12 they indirectly attack this argument by asserting (in their statute of limitations argument) that the

13 injury they are complaining about now is dermatomyositis, which, they imply, is entirely different

14 from the diseases addressed in the earlier lawsuit, notwithstanding the overlapping of some of the

15 symptoms.

16   Defendant's argument depends upon its broad formulation of the issue decided by the

17 courts in the first lawsuit. As defendant frames it, the issue is "whether Ms. Viramontes suffered

18 *personal injuries* caused by her use of Celebrex in 2002 and 2003." Motion at 5 (emphasis

19 added). If the issue is decided is whether plaintiff suffered "personal injuries," defendant prevails

20 on this ground.

---

[13] This disease caused the following symptoms: "severe widespread redness of the skin, severe burning rash, severe widespread sores, severe widespread cutaneous eruption of flat spots and tiny bumps on the skin, severe inflammation of the lymph nodes, severe inflammation of the head, severe widespread inflammation of the breast, severe inflammation of the thyroid gland, severe widespread inflammation of the joints, severe widespread swelling, severe weight gain, severe widespread muscle pain, severe widespread joint stiffness and pain, severe widespread itching, severe allergies to foods I severe widespread chills and fever, severe widespread muscle wasting, severe subcutaneous fat loss, Severe liver disease, severe chronic fatigue, chronic head pain, severe low red blood cells, severe low infection-fighting white blood cells, internal bleeding, boils, severe hair loss, loss of toe nails, swollen gums, mouth sores, bone loss, poor circulation, kidney disease, heart murmur, regurgitation of the right heart valve, impaired vision, vertigo, and the denial of treatment from SCIF insured." Id. at 8 ¶ 8.

But the cases preclude this interpretation. To bar relitigation of an issue in this lawsuit, the issue must be "identical" to the issue decided in the prior lawsuit. Hernandez, 46 Cal. 4th at 511-12 ("the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"). "The 'identical issue' requirement addresses whether '*identical factual allegations*' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." Id. at 511-12 (emphasis added) (internal quotation marks omitted).

The factual allegations of the first lawsuit *relating to causality* are not identical to those of this lawsuit. In the first lawsuit, plaintiff alleged that Celebrex caused severe arthritis, leuko lymphopenia, and drug induced lupus, presumably the only injuries plaintiff knew about at the time. In this lawsuit, plaintiff alleges that Celebrex caused dermatomyositis, allegedly an entirely separate and distinct disease (reading the complaint liberally), which plaintiff could not have known about until she was diagnosed with it in on July 18, 2013.[14]

Since the issue of whether Celebrex caused *dermatomyositis*, or "personal injuries" in general, was not at issue in the prior case, plaintiff was not required to put on evidence about that issue, and the prior courts cannot have ruled on it. Rather, the only issue now precluded is whether Celebrex caused plaintiff's severe arthritis, leuko lymphopenia, and drug induced lupus.

C. Res Judicata ("Claim Preclusion")

"[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits." Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir.), cert. denied, 459 U.S. 1087 (1982).

"Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." DKN

---

[14] It is true that in the first lawsuit, plaintiff apparently did not put on *any* evidence that Celebrex caused *any* problems. However, in order to win that lawsuit, or even to properly oppose summary judgment, plaintiff was required to put on evidence that Celebrex caused the diseases she alleged in that case, namely, severe arthritis, leuko lymphopenia, and drug induced lupus. She was not required to put on evidence that Celebrex caused dermatomyositis. Indeed, if she had done so, it would have made no difference in the summary judgment outcome, since dermatomyositis was not at issue. Nor was she required to put on evidence that Celebrex caused "personal injury" in general, since that also was not an issue in the case.

15

Holdings LLC v. Faerber, 61 Cal. 4th 813, 824 (2015). In other words, "[t]he doctrine of res judicata prohibits a second suit between the same parties on the same *cause of action*." Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 792 (2010) (emphasis added). The term "cause of action" in this context is a term of art: "In this context, the term 'cause of action' is defined in terms of a primary right and a breach of the corresponding duty; the primary right and the breach together constitute the cause of action." Id.; DKN Holdings, 61 Cal. 4th at 818 ("[u]nder the 'primary rights' theory, a cause of action arises from the invasion of a primary right").

To determine whether there is claim preclusion under the primary rights theory, "the determinative factor is the harm suffered." Boeken, 48 Cal. 4th at 798. Defendant rests its argument upon the principle that "[w]hen two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." Id. It argues: "Ms. Viramontes's latest claims derive from the same primary right that she litigated in 2005: her right to be free from personal injury purportedly caused by the pharmaceutical products Bextra and Celebrex, which she allegedly used in 2002 and 2003." Motion at 8.[15]

This is a defensible position, premised as it is on defendant's assumption that plaintiffs' "primary right" is "to be free from personal injury" caused by Celebrex. The premise sounds sensible, and is grounded in the California cases. See, e.g., Slater v. Blackwood, 15 Cal. 3d 791, 795 (1975) ("[i]t is clearly established that '. . . there is but one cause of action for one personal injury (which is incurred) by reason of one wrongful act'"). Indeed, it is clear that when the "personal injury" for which plaintiff seeks compensation is the same in two different cases, then the latter case is barred by claim preclusion, no matter how fundamentally different the legal theory of recovery may be in the latter action. See Boeken, 48 Cal. 4th 788 (current loss of consortium claim, based upon spouse's death, is barred by prior loss of consortium claim, based upon spouse's injury, even though the current claim could not be brought until after spouse's death).

However, defendant's view of the "personal injury" as necessarily being a single,

---

[15] Bextra is not at issue in this lawsuit.

indivisible thing that could give rise to only one lawsuit, is not necessarily correct. Here, the primary right that plaintiff sued over in her first-filed case was the right to be free from severe arthritis, leuko lymphopenia, and drug induced lupus. The primary right that she sues over now is the right to be free from dermatomyositis.

There appears to be no definitive case for or against the proposition that two distinct primary rights of the same type – here, personal injury – can be invaded by the same tort.[16] The cases are clear that *statutes of limitations* can accrue separately for different types of injuries, even when both injuries are diseases (so long as they are "qualitatively different" diseases), and even when they arise from the same tort, as discussed above. See Pooshs, 51 Cal. 4th at 792; Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 645 (2007) (in another tobacco tort case, the alleged economic injury (spending money because of the addiction to nicotine) is a different "type" of injury from the alleged physical injury (lung cancer), and therefore the accrual of the limitations period for the economic injury does not trigger the limitations period for the physical injury, even though both arise from the same tort).

However, the California Supreme Court has expressly declined to consider whether one tort can invade two separate primary rights, when the only harm inflicted is a "personal injury." See Pooshs, 51 Cal. 4th at 800 n.6 (allowing two separate limitations periods because in Grisham, "we necessarily, albeit implicitly, assumed that, even if the plaintiff's various claims involved only a single primary right (as the defendants there asserted), we could still apply the statute of limitations separately to the plaintiff's physical injury claim"); Grisham, 40 Cal. 4th at 643 ("[w]e need not resolve whether and under what circumstances two different physical injuries arising out of the same wrongdoing can give rise to two separate lawsuits, or whether the two injuries in the present case can be conceived of as invading two different primary rights").

Defendant cites no cases to refute the possibility that plaintiff can sue now over the

---

[16] However, the Court of Appeal has determined that a single tort can invade two separate primary rights when one is the personal injury to the primary plaintiff, and the other is the loss of consortium injury to the plaintiff's spouse. See Shelton v. Superior Court, 56 Cal. App. 3d 66, 80 (1976) ("[i]n this case it is purely fortuitous that as to each of petitioners both primary rights were violated by the same tortious act").

invasion of a different primary right than she sued over in her first lawsuit, both of which were invaded by the same tort.[17]  Instead, it just assumes that this lawsuit seeks to vindicate the same primary right.  Plaintiff, proceeding pro se, does not cite any cases supporting the view that this is a different primary right.

Even though this is a legal question, the undersigned believes that this federal court should only attempt to resolve this state-law issue after receiving briefing from the parties.  This is particularly so because it appears that the California courts are leaning toward holding that one tort can give rise to two different primary rights even when both harms are of the same type.  By permitting the statutes of limitations to run independently for different diseases caused by the same tort, the California Supreme Court in Pooshs has shown that it may be willing to make such a holding.  Accordingly, since defendant has not shown legal grounds for dismissing on this basis, the motion should be denied.

### D.  Loss of Consortium

The elements of a loss of consortium claim are:

> "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; [¶] (2) a tortious injury to the plaintiff's spouse; [¶] (3) loss of consortium suffered by the plaintiff; and [¶] (4) the loss was proximately caused by the defendant's act."

LeFiell Mfg. Co. v. Superior Court, 55 Cal. 4th 275, 284-85 (2012) (quoting Hahn v. Mirda, 147 Cal. App. 4th 740, 746 (2007)).

---

[17] In Tensor Group v. City of Glendale, 14 Cal. App. 4th 154, 160 (2nd Dist. 1993), plaintiff first sued the defendant city over the "the limitation placed on its use of its property by the City's moratorium ordinances."  The first action was "a petition for writ of mandate and injunctive relief and a complaint for declaratory relief and damages."  After he lost, he sued over it again, this time invoking "inverse condemnation."  The court held that the "injury or primary right is identical to that being propounded in Tensor's complaint for inverse condemnation," and therefore dismissed the claim on res judicata grounds.  In Slater, plaintiff sued under the "guest statute," over injuries she sustained in a car accident.  She lost.  After the "guest statute" was declared unconstitutional, plaintiff sued again, on a theory of negligence.  It was for the same accident and the same injuries.  The California Supreme Court affirmed the dismissal on res judicata grounds.  In Boeken, the Court held that the current loss of consortium claim, which was based upon the spouse's death, was barred by the prior loss of consortium claim, based upon the spouse's injury, even though the current claim could not be brought until after the spouse's death.  None of these cases addresses whether freedom from one disease is a different primary right than freedom from a separate and distinct disease.

1    Defendant's sole argument for dismissing the husband's claim is that the underlying claim
2 by the wife is dismissible.  Since the wife's claims should not be dismissed at this point, the court
3 will not recommend dismissal of this claim.
4    E.  Summary Judgment
5    At the hearing on defendant's dismissal motion, counsel suggested that the court could
6 convert the motion into a summary judgment motion.  See Fed. R. Civ. P. 12(d).  Defendant
7 argues that Exhibit B to Plaintiffs' Request for Judicial Notice warrants a summary judgment,
8 because it proves that plaintiff was diagnosed with dermatomyositis in 2010 or 2012, more than
9 two years before plaintiff filed her lawsuit, and moreover, that plaintiff is suing over the same
10 disease that she sued over in 2005.  However, as discussed above, Exhibit B does not establish
11 these things.  Accordingly, there is no point in converting this motion into a summary judgment.
12 Defendant should be free, however, to file a summary judgment motion, and to, if it wishes,
13 present evidence showing that its view of Exhibit B is correct.
14                             IV.  CONCLUSION
15    For the reasons stated above, IT IS HEREBY ORDERED that:
16    1.  Defendant's Request for Judicial Notice (ECF No. 6-2), is GRANTED as to Exhibits
17 A-D, and otherwise DENIED without prejudice;
18    2.  Plaintiff's Request for Judicial Notice (ECF No. 13), is GRANTED as to Exhibits B
19 and D, and otherwise DENIED without prejudice.
20    Furthermore, for the reasons stated above, IT IS HEREBY RECOMMENDED that:
21    1.  Defendant's Motion To Dismiss (ECF No. 6), be DENIED; and
22    2.  Defendant's request to convert the Motion To Dismiss into a summary judgment
23 motion be DENIED, without prejudice to defendant's ability to file a motion for summary
24 judgment on any of the issues addressed here.
25    These findings and recommendations are submitted to the United States District Judge
26 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one days
27 after being served with these findings and recommendations, any party may file written
28 objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED:  September 28, 2015

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE