UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON E. VIRAMONTES, et al., | No.  2:15-cv-1754 TLN AC (PS) |
| Plaintiffs, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| PFIZER, INC., | |
| Defendant. | |

This is a removed diversity action alleging strict products liability, negligence and loss of consortium.  Defendant moves to dismiss.  ECF No. 6.  Defendant argues that the complaint, and other matters of which the court may take judicial notice, show that all the claims are barred by the statute of limitations, collateral estoppel and res judicata.

For the reasons set forth below, the undersigned will recommend that plaintiffs' negligence and strict products liability claims be dismissed with prejudice, but that plaintiff Edward Viramontes's loss of consortium claim be dismissed with leave to amend.

I.  PRIOR PROCEEDINGS

On September 29, 2015, the undersigned issued Findings and Recommendations ("F&Rs") that recommended denial of defendant's motion to dismiss.  ECF No. 19.  According to the F&Rs, there was no evidence that plaintiff had ever seen a November 21, 2012 "Consultation Report," authored by Ira Fishman, M.D., a document subject to judicial notice.  ECF No. 19 at 11.

1  This finding was critical to defendant's statute of limitations argument, since the document, "if

2  communicated to plaintiff at the time, would tend to show that she had 'reason to suspect' as of

3  November 21, 2012, that Celebrex had caused her dermatomyositis." ECF No. 19 at 11.  Thus,

4  plaintiff's lawsuit, originally filed in state court on July 17, 2015, would be barred by the two-

5  year statute of limitations if she was aware of this document on or about November 21, 2012.

6        Defendant timely filed objections.  ECF No. 20.  Defendant asserts, among other things,

7  that in fact:

8       A proof of service attached to the end of Dr. Fishman's report
      indicates that the report – and diagnosis – was served on Ms.
9       Viramontes on November 21, 2012.  (Dkt. No. 13 (Pls.' RJN), Ex.
      B (2012 Fishman Report), last page.)
10

11  ECF No. 20 at 6.  Defendant's objections being well-taken, the court then ordered plaintiffs to

12  respond to the Objections, or face a possible dismissal based upon the statute of limitations.  ECF

13  No. 21.

14        Plaintiffs timely filed a response.  ECF No. 22.  In their response, plaintiffs concede that

15  they "were served with the November 21, 2012 report by Ira Fishman before July 17, 2013."

16  ECF No. 22-1 at 2.  They argue, however, that:

17       the November 21, 2012 report does not affirm that the ingestion of
      Celebrex caused Plaintiff, Sharon E. Viramontes Dermatomyositis.
18       Rather, it repetitively conveys the necessity for additional medical
      testing and/or consultations to determine the diagnosis for a
19       complex and challenging case.

20  ECF No. 22-1 at 2.

21       Given plaintiff's concession, and for the reasons set forth below, the undersigned will

22  vacate the initial Findings and Recommendations and instead recommend that plaintiffs'

23  negligence and strict products liability claims be dismissed with prejudice, but that plaintiff

24  Edward Viramontes's loss of consortium claim be dismissed with leave to amend.

25                     II.  REQUESTS FOR JUDICIAL NOTICE

26       The parties have requested that the court take judicial notice of several documents.  See

27  ECF No. 6-2 (defendant), 13 (plaintiff), 22-2 (plaintiff).  This court must, upon request, take

28  judicial notice of any "fact" that is "not subject to reasonable dispute."  Fed. R. Evid. 201(b).

1  Facts are indisputable, and thus subject to judicial notice, only if they are either "generally
2  known," or "can be accurately and readily determined from sources whose accuracy cannot be
3  reasonably questioned."  Fed. R. Civ. P. 201(1), (2); <u>United States v. Ritchie</u>, 342 F.3d 903, 909
4  (9th Cir. 2003).  Judicially noticed facts may be considered on a dismissal motion under
5  Rule 12(b)(6).  See <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986) ("[o]n a
6  motion to dismiss, we may take judicial notice of matters of public record outside the pleadings").

      A.  <u>Defendant's Requests</u>

Defendant requests judicial notice ("Defendant's RfJN") of four documents that are part of the public records of the California state courts.  The documents, attached as exhibits to defendant's request, are:

      1.  Exh. A (ECF No. 6-3) – Complaint in <u>Viramontes v. Pfizer</u>, 05AS00103 (Sacramento County Superior Court January 10, 2005).

      2.  Exh. B (ECF No. 6-4) – First Amended Complaint in <u>Viramontes v. Pfizer, Inc.</u>, 05AS00103 (Sacramento County Superior Court August 4, 2005).

      3.  Exh. C (ECF No. 6-5) – Summary Judgment Order in <u>Viramontes v. Pfizer, Inc.</u>, 05AS00103 (Sacramento County Superior Court December 12, 2006).

      4.  Exh. D (ECF No. 6-6) – Court of Appeal Decision in <u>Viramontes v. Pfizer, Inc.</u>, C054674 (3rd Dist. June 20, 2008).

Defendant relies upon these documents in arguing that the current lawsuit is barred by collateral estoppel, res judicata and the statute of limitations.  They are proper subjects of judicial notice.  See <u>United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts, both within and without the federal judicial system,if those proceedings have a direct relation to matters at issue") (internal quotation marks omitted).  Accordingly, the request for judicial notice of these documents is GRANTED.

Defendant also requests judicial notice of a document headlined "LexisNexis | Accurint® for Legal Professionals," which purports to be "Marriage Divorce Search Results," and which is attached to the request as Exhibit E (ECF No. 6-7).  This document is intended to show that

plaintiffs were married and therefore in "privity" with each other at the time the first lawsuit was filed. However, apart from defendant's description of the document as a "Public Record Report," defendant provides no information that would enable this court to conclude that this is a public record (or a report thereof), or to be confident of the facts stated in the document.[1] Accordingly, the request for judicial notice of this document is DENIED, without prejudice.

In its Objections, defendant requests that the court take judicial notice of plaintiff's October 3, 2005 Answers To Interrogatories (ECF No. 20-2), which defendants' counsel represents was filed in state court on September 1, 2006. Plaintiffs have not objected to the request. The court accordingly will take judicial notice of this document.

### B. Plaintiffs' Requests

Plaintiffs request that the court take judicial notice of the July 18, 2013 "Qualified Medical Evaluation Supplemental Report," authored by Ira Fishman, M.D. See Plaintiffs' Request for Judicial Notice ("Plaintiffs' RfJN") (ECF No. 13) at 46-53 (Exh. D). More specifically, plaintiff wants the court to take judicial notice of the "fact" that she first became aware that Celebrex caused her dermatomyositis on or after Dr. Fishman disclosed it in that July 18, 2013 report. See Complaint ¶ 8 at 10 ("On 7-18-2013, A QME, Ira Fishman's report confirmed with the following statement that I had developed **Dermatomyositis** from the industrial use of **Celebrex**") (emphasis in text).

Defendant offers no objection to the request to take judicial notice of this document.[2] Accordingly, the court GRANTS plaintiffs' motion to the extent that the court will take judicial notice of the fact that Dr. Fishman authored the document on or about July 18, 2013. However, there is nothing in the document that indicates that this was the first time that plaintiff became

---

[1] Defendant's description of this document as "'Accurint' Marriage/Divorce Public Record Report," is not accurate. See ECF No. 6-2 at 4. The words "Public Record Report" does not appear anywhere on this document.

[2] In any event, judicial notice is not required for the court to consider this document. The document is referenced in plaintiffs' complaint, attached to their Request for Judicial Notice as part of their claim that the statute of limitations is tolled, and its authenticity is not questioned by any party. Therefore, the document is "incorporated by reference" into the complaint. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

1  aware of the dermatomyositis or its connection to Celebrex.  Accordingly, the court does *not* take
2  judicial notice of the purported fact that this was the first time plaintiff was aware of that
3  diagnosis or that connection.

4  Plaintiff requests that the court take judicial notice of the November 21, 2012
5  "Consultation Report," an earlier report also authored by Dr. Fishman.  See Plaintiffs' RfJN
6  at 9-42 (Exh. B).  The reason plaintiff asks for judicial notice of this document is unknown, as she
7  made no reference to it in her complaint or at the hearing on this motion.  However, defendant
8  does not object to taking judicial notice of it.  To the contrary, defendant adopts the document,
9  and asserts that it supports the purported "facts" that (1) that dermatomyositis is the same disease
10 that plaintiff sued over in 2005, (2) plaintiff knew she had "dermatomyositis" itself in 2010, based
11 on an October 19, 2010 diagnosis by Dr. David Knepler, and (3) plaintiff knew she had
12 dermatomyositis by November 21, 2012, the date of Dr. Fishman's first report.

13 Since neither side disputes the fact that Dr. Fishman authored this document, nor does
14 either side dispute that the report says what it says (as opposed to their interpretations of what it
15 means or proves), the court GRANTS plaintiffs' motion to the extent that the court will take
16 judicial notice of the fact that Dr. Fishman authored the document on or about November 21,
17 2012.

18 Plaintiffs' remaining requests for judicial notice are for documents that have no apparent
19 bearing on this motion, or are not proper subjects for judicial notice.  See ECF No. 13, 22-2.
20 Accordingly, the request is DENIED as to those documents.

21                                III.  THE COMPLAINT
22        A.  The First Lawsuit

23 Plaintiff first sued defendant on August 4, 2005 in Sacramento Superior Court.  ECF
24 No. 6-4.  In her first-filed lawsuit, plaintiff alleged that on May 13, 2002, she first took Celebrex,
25 after her doctor gave it to her.  ECF No. 6-4 at 10 ¶ 1.  She believed the drug was safe, as she
26 received no warnings of any side effects.  Id.  Plaintiff stopped taking Celebrex after a week
27 because it gave her gas.  Id.  She was prescribed Celebrex again on January 9, 2003, and took it
28 until April 10, 2003, when a doctor told her that she was having an allergic reaction to it.  Id.

1  Since then, and as a direct result of taking Celebrex (and defendant's failure to warn of the
2  dangers), plaintiff has suffered from "severe arthritis," "leuko lymphopenia," and "drug induced
3  lupus." ECF No. 6-4 at 11 ¶ 1.[3]

4  The complaint asserted two claims, namely, strict products liability and negligence. Id.
5  The products liability claim alleged that Celebrex, which was manufactured and sold by
6  defendant, was defective and unreasonably dangerous "to an extent beyond that which would be
7  contemplated by the ordinary consumer [who] purchases or uses the product." Id. at 14 ¶ 13.
8  Defendant failed to conduct appropriate testing of Celebrex, failed to warn the public of the
9  dangers of Celebrex and refused to design a safer drug. Id. ¶¶ 4-7. The negligence claim also
10 alleged that defendant failed to warn plaintiff of the drug's severe side-effects. Id. at 12 ¶ 5-7.
11 The complaint alleges that plaintiff suffered the above injuries as a direct result of taking
12 Celebrex, and defendant's failure to warn. Id. at 14 ¶ 14 [incorrectly numbered "11"].

13 Defendant moved for summary judgment in the first-filed lawsuit. See Superior Court
14 Decision (ECF No. 6-5) at 4. The basis for the motion was that "plaintiff cannot show that the
15 drugs were the cause of her injuries." Id. The Superior Court determined that "In a personal
16 injury action causation must be proven within a reasonable medical probability based upon
17 competent expert testimony." Id. It then granted defendant's motion on the ground that plaintiff
18 "failed to offer any expert testimony on causation of her personal injuries." Id. at 5. The Court of
19 Appeal affirmed on June 20, 2008, noting that "[t]he only element at issue in this appeal is
20 causation." Id. at 8.

21 B. The current lawsuit

22 Plaintiff and her husband ("plaintiffs") filed the current lawsuit on July 17, 2015. ECF
23 No. 1-1. Like the first complaint, this complaint alleges that plaintiff first took Celebrex on May
24 13, 2002 on the advice of her physician. It similarly alleges that defendant negligently

---

[3] She suffered from the following symptoms: "hair loss, inability to hold her head up, inability to turn her neck, full body swelling, a rapid heart beat, swollen lymph nodes, sores all over body and inside the mouth, a fiery heat rash all over body, severe internal itching, chills, sore lumpy breast, severe muscle pain, atrophy, fatigue, vertigo, severe muscle loss in buttocks and entire body, allergy sensitivities, and nightmares." ECF No. 6-4 at 11 ¶ 1 & 14 ¶ 14 [incorrectly numbered ¶ "11"].

manufactured Celebrex and negligently failed to warn of its dangers. Id. at 7 ¶¶ 6-7. In this complaint, however, plaintiffs allege that as a direct and proximate cause of this negligence, plaintiff developed "dermatomyositis ('a rare inflammatory muscle disease')." Id. at 7-8 ¶ 8. Reading the pro se complaint liberally, it alleges that this disease is entirely separate and distinct from the severe arthritis, leuko lymphopenia, and drug induced lupus that plaintiff alleged in the first lawsuit.[4] Thus this lawsuit is arguably subject to a different statute of limitations, and arguably not barred by claim or issue preclusion.[5] The complaint alleges that plaintiff first learned that she had dermatomyositis on July 18, 2013, when she received a report on her condition from Dr. Fishman. Id. at 10 ¶ 8.

Plaintiff Edward Viramontes ("Mr. Viramontes"), plaintiff's spouse, suffered a loss of consortium as a result of plaintiff's injuries. Id. ¶¶ 12-14. Plaintiffs seek compensatory and punitive damages and lost wages, alleging (1) negligence, (2) strict products liability, and (3) loss of consortium.

## IV.  DISMISSAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th

---

[4] This disease caused the following symptoms: "severe widespread redness of the skin, severe burning rash, severe widespread sores, severe widespread cutaneous eruption of flat spots and tiny bumps on the skin, severe inflammation of the lymph nodes, severe inflammation of the head, severe widespread inflammation of the breast, severe inflammation of the thyroid gland, severe widespread inflammation of the joints, severe widespread swelling, severe weight gain, severe widespread muscle pain, severe widespread joint stiffness and pain, severe widespread itching, severe allergies to foods I severe widespread chills and fever, severe widespread muscle wasting, severe subcutaneous fat loss, Severe liver disease, severe chronic fatigue, chronic head pain, severe low red blood cells, severe low infection-fighting white blood cells, internal bleeding, boils, severe hair loss, loss of toe nails, swollen gums, mouth sores, bone loss, poor circulation, kidney disease, heart murmur, regurgitation of the right heart valve, impaired vision, vertigo, and the denial of treatment from SCIF insured." Id. at 8 ¶ 8.

[5] Because the undersigned finds that the current lawsuit is plainly barred even by the later statute of limitations, these findings and recommendations do not address the much more complicated issue of whether the later statute of limitations actually should be used. See Pooshs v. Philip Morris USA, Inc., 51 Cal. 4th 788, 792 (2011) ("when a later-discovered latent disease is separate and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of limitations for a lawsuit based on the later disease"). Nor do they address claim and issue preclusion. See Hernandez v. City of Pomona, 46 Cal. 4th 501, 511 (2009) (discussing collateral estoppel or "issue preclusion"); Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 792 (2010) (discussing res judicata, or "claim preclusion," in light of the "primary rights" theory).

1  Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of
2  sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901
3  F.2d 696, 699 (9th Cir. 1990).

4  In order to survive dismissal for failure to state a claim, a complaint must contain more
5  than a "formulaic recitation of the elements of a cause of action;" it must contain factual
6  allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v.
7  Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of
8  facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of
9  action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35
10  (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to
11  'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
12  (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads
13  factual content that allows the court to draw the reasonable inference that the defendant is liable
14  for the misconduct alleged." Id.

15  In reviewing a complaint under this standard, the court "must accept as true all of the
16  factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing
17  Twombly, 550 U.S. at 555-56), construe those allegations in the light most favorable to the
18  plaintiff, Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th
19  Cir. 2010) (citing Twombly, 550 U.S. 544), cert. denied, 131 S. Ct. 3055 (2011), and resolve all
20  doubts in the plaintiffs' favor. Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010) (citing Hospital
21  Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738 (1976)).

22  The court need not accept as true, legal conclusions "cast in the form of factual
23  allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, the
24  court need not accept as true "allegations that contradict matters properly subject to judicial
25  notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as
26  amended, 275 F.3d 1187 (2001).

27  Moreover, pro se pleadings are held to a less stringent standard than those drafted by
28  lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). "Pro se complaints are construed

8

'liberally' and may only be dismissed 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (quoting Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012)).[6] A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

These same standards apply when defendant moves to dismiss based upon an affirmative defense.[7]

> Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint. If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper.

ASARCO, LLC v. Union Pacific R. Co.. 765 F.3d 999, 1004 (9th Cir. 2014) (citations omitted); see also, Jones v. Bock, 549 U.S. 199, 215 (2007) ("[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground").

Motions to dismiss based upon the statute of limitations are, like such motions based upon any affirmative defense, subject to the same rules. This is true here, where the timeliness of the complaint relies upon the limitations period being tolled until plaintiff reasonably discovers the claim.

> A motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." In fact, a complaint cannot be dismissed unless it appears beyond doubt that the

---

[6] "Iqbal did not alter the rule that, 'where the petitioner is pro se, particularly in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt.'" Wilhelm, 680 F.3d at 1121 (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)).

[7] Defendant's motions are based upon affirmative defenses. See Fed. R. Civ. P. 8(c)(1) ("estoppel," "res judicata" and "statute of limitations" are among the affirmative defenses); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350 (1971) ("[r]es judicata and collateral estoppel are affirmative defenses that must be pleaded").

> plaintiff can prove no set of facts that would establish the timeliness of the claim.

Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980); Von Saher, 592 F.3d at 969.

## V. ANALYSIS

Defendant argues that (1) plaintiffs knew of Sharon Viramontes' alleged injury, and its cause, no later than November 21, 2012, when Ms. Viramontes received Dr. Fishman's report (Exhibit B to the Plaintiffs' Request for Judicial Notice), and therefore their negligence and product liability claims are barred by the statute of limitations, (2) plaintiff Sharon Viramontes has already sued for an injury she allegedly suffered from ingesting Celebrex, and therefore, under the "first injury" doctrine, plaintiffs are barred from suing for Ms. Viramontes' current injury arising from the same ingestion, and (3) plaintiff Edward G. Viramontes' loss of consortium claim is barred because plaintiffs cannot prove the negligence and product liability claims upon which his claim is predicated, and because the claim is barred by the statute of limitations.

### A. Negligence and Products Liability - Statute of Limitations

#### 1. The law

"In a federal diversity action brought under state law, the state statute of limitations controls." Bancorp Leasing and Financial Corp. v. Agusta Aviation Corp., 813 F.2d 272, 274 (9th Cir. 1987). Plaintiff argues that the statute of limitations applicable to plaintiffs' claims for negligence and products liability is Cal. Civ. Proc. Code § 335.1. That statute provides a two-year statute of limitations.[8] Id. Plaintiffs do not dispute that they are subject to a two year statute of limitations.

---

[8] Another possible statute of limitations for these claims is Cal. Civ. Proc. Code § 340.8(a), which governs civil actions "for injury or illness based upon exposure to a hazardous material or toxic substance." See Nelson v. Indevus Pharmaceuticals, Inc., 142 Cal. App. 4th 1202, 1208-09 (2nd Dist. 2006) (Section 340.8(a) applies to exposure to prescription drugs, rejecting the argument that it applies only to environmental hazards). However, both statutes impose a two year limitations period, both are subject to the discovery rule, discussed below, and there appears to be no substantive difference in the operation of these two statutes, at least as far as this motion is concerned.

"Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action." Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) (citing Cal. Civ. Proc. Code § 312). Under the "general rule," the limitations period begins to run "when the cause of action is complete with all of its elements." Id. (citing Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal. 3d 176, 187 (1971) ("[i]n ordinary tort and contract actions, the statute of limitations, it is true, begins to run upon the occurrence of the last element essential to the cause of action")). Under the delayed discovery rule however,

> a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action. In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis.

Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 803 (2005).[9]

Under California law:

> the plaintiff discovers the cause of action when he at least suspects a factual basis . . . for its elements, *even if he lacks knowledge thereof* . . . . He has reason to suspect when he has notice or information of circumstances to put a reasonable person on *inquiry*; he need not know the specific facts necessary to "establish" the cause of action; rather, he may seek to learn such facts through the process contemplated by pretrial discovery; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place – he cannot wait for them to find him and sit on his rights; he must go find them himself if he can and file suit if he does.

Norgart v. Upjohn Co., 21 Cal. 4th 383, 398 (1999) (emphases added) (citations, footnotes and some internal quotation marks omitted).

Accordingly, plaintiffs' negligence and product liability claims are time barred unless they filed this lawsuit no later than two years after Ms. Viramontes' injury, or two years after plaintiffs

---

[9] Under Section 340.8(a), the statute is tolled until "plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later."

11

1 | had "reason to suspect" that her ingestion of Celebrex had caused her dermatomyositis.

2 |         2. <u>The facts</u>

3 | On November 21, 2012, Dr. Fishman authored a report stating:

> Certainly there is no medical certainty here but the facts are sufficient, buttressed by the medical literature, to conclude with reasonable medical probability that the applicant's [Ms. Viramontes] dermatomyositis was linked to chronic industrial use of Celebrex.

Plaintiffs' RfJN (ECF No. 13) at 28 ("Exhibit B"). The report is addressed to "Ms. Susan Isenman" at the "State Compensation Insurance Fund." Plaintiffs' RfJN at 9. However, the very end of the report contains a "Declaration of Service" asserting that the report was mailed to plaintiff on November 21, 2012. Plaintiff's RfJN at 42. Plaintiffs concede that they were served with this report "before July 17, 2013." ECF No. 22-1 at 2.

This lawsuit was originally filed, in state court, on July 17, 2015. Thus, plaintiffs concede that they were served with Dr. Fishman's 2012 report more than two years (at least two years and one day) before this complaint was originally filed.

        3. <u>Analysis</u>

The issue, then, is whether the November 21, 2012 report gave plaintiffs "reason to suspect" that Sharon Viramontes's ingestion of Celebrex caused her dermatomyositis.[10] The report plainly does so:

> With regard to Ms. Viramontes [sic] specific case, the clinical evidence is detailed and compelling that, upon discontinuation of Celebrex in approximately April of 2003, multiple abnormal laboratory parameters, including positive autoimmune tests, improved considerably and promptly, followed by gradual improvement in clinical inflammation of skin and muscle characteristic of dermatomysitis [sic] and absent any treatment with

---

[10] There is no question that Ms. Viramontes had reason to suspect that her ingestion of Celebrex caused her *an* injury, since she sued Pfizer over just that issue in 2005. See Defendant's Request for Judicial Notice, Exhibit A. Plaintiffs argue that they are now suing for a qualitatively different disease – dermatomyositis – and that therefore the statute of limitations does not begin to run until they discovered that Ms. Viramontes suffered from that disease, under the rationale of <u>Pooshs v. Philip Morris USA, Inc.</u>, 51 Cal. 4th 788, 792 (2011) ("when a later-discovered latent disease is separate and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of limitations for a lawsuit based on the later disease"). Since the action is barred even under plaintiffs' own theory, this recommendation need not address that argument.

> steroids which the applicant declined to consider. Certainly, there is no medical certainty here but *the facts are sufficient, buttressed by the medical literature, to conclude with reasonable medical probability that the applicant's dermatomyositis was linked to chronic industrial use of Celebrex.*

Plaintiff's RfJN at 28 (emphasis added).

Plaintiffs argue that this report "repetitively conveys the necessity for additional medical testing and/or consultations to determine the diagnosis for a complex and challenging case." ECF No. 22-1 at 2. Plaintiffs are correct that the report calls for further testing, whereas the July 18, 2013 report does not. The November 21st letter states:

> The only caveat is a need to verify that the applicant's autoimmune markers and other laboratory parameters have remained improved, particularly since she has not received any medical treatment in the past two years. . . .. Also, the etiology of the applicant's persistent fatigue and excessive daytime sleepiness is not clear and requires further workup to determine if it has any relationship to the previous episode of drug induced autoimmunity.

Id.

However, there is no requirement that plaintiffs know that Celebrex caused the dermatomyositis to a medical certainty. They need only have "reason to suspect" the fact. Dr. Fishman notified plaintiffs on or about November 21, 2012, that to a "reasonable medical certainty," there was a link between Ms. Viramontes's dermatomyositis and her ingestion of Celebrex. The July 18, 2013 Dr. Fishman report, upon which plaintiffs rely as establishing the start of the limitations period, only confirms the earlier report.

There is therefore no reasonable conclusion to draw other than that the earlier report provided plaintiffs with "reason to suspect" the link between Celebrex and dermatomyositis. See Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 638-39 (2007) (plaintiff had "reason to suspect" she was addicted to cigarettes when she joined Nicotine Anonymous and failed to stop smoking even though "she only joined to appease her family and still believed that she could quit at will if she wanted to"); Rose v. Fife, 207 Cal. App. 3d 760, 769-70 (3rd Dist. 1989) (plaintiff's "general mistrust and suspicion about IUDs per se" gave rise to her duty to inquire about the

////

////

effects of the particular IUD she had used, and so the limitations period commenced at that point).[11]

It is worth noting that plaintiffs were not required to file suit the moment they had reason to suspect that the Celebrex had caused plaintiff's dermatomyositis. Rather, they were at that point put on *inquiry* notice, and if they were ever to be able to file suit over it, they had two years to develop the facts that would confirm or refute their reasonable suspicion. See Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110-11 (1988) ("[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing," and "the limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . ..") (internal quotation marks omitted).

In this case, plaintiffs' reasonable suspicions were confirmed just a few months later, on July 18, 2013, when they received Dr. Fishman's second report. However, plaintiffs then sat on their rights for two years after receiving the second report – rather than suing right away, or in any event within two years after their reasonable suspicions were aroused. By doing so, their right to sue expired on or about November 21, 2014, two years after they were provided with a reasonable suspicion that Celebrex had caused Ms. Viramontes's dermatomyositis.

As discussed above, the November 21, 2012 Dr. Fishman report – which was filed here by plaintiffs – is properly the subject of judicial notice, and shows that plaintiffs were on notice of the link between Celebrex and dermatomyositis as of that date. The court therefore disregards plaintiffs' implied allegation that they were first put on notice on July 18, 2013. Defendant's statute of limitations defense is therefore meritorious in regard to the first two claims.

B. Loss of Consortium

"'[I]n California each spouse has a cause of action for loss of consortium . . . caused by a negligent or intentional injury to the other spouse by a third party.'" Zwicker v. Altamont Emergency Room Physicians Med. Grp., 98 Cal. App. 4th 26, 30 (3rd Dist. 2002) (quoting

---

[11] Indeed a lesser standard than "reasonable medical certainty" is sufficient to establish tort liability. California law "is well settled that in a personal injury action causation must be proven within a *reasonable medical probability* based upon competent expert testimony." Jones v. Ortho Pharm. Corp., 163 Cal. App. 3d 396, 402 (2nd Dist. 1985) (emphasis added).

Rodriguez v. Bethlehem Steel Corp., 12 Cal. 3d 382, 408 (1974)).  The elements of a loss of consortium claim are:

> "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; [¶] (2) a tortious injury to the plaintiff's spouse; [¶] (3) loss of consortium suffered by the plaintiff; and [¶] (4) the loss was proximately caused by the defendant's act."

LeFiell Mfg. Co. v. Superior Court, 55 Cal. 4th 275, 284-85 (2012) (quoting Hahn v. Mirda, 147 Cal. App. 4th 740, 746 (2007)).  Plaintiff Mr. Viramontes alleges that he suffered a loss of consortium as the result of the dermatomyositis injury suffered by his wife.

Defendant barely mentions the loss of consortium claim.  It argues that the claim is barred by "collateral estoppel," based upon the fact that Ms. Viramontes lost her original personal injury lawsuit on the merits.  ECF No. 6-1 at 6 & 7.  Defendant cites California Civil Jury Instruction 3920 in support of its argument.  Defendant's argument is facially appealing, since it is true that if Ms. Viramontes in fact suffered no injury, then Mr. Viramontes could not sue for loss of consortium arising out that non-existent injury.  See Hahn v. Mirda, 147 Cal. App. 4th 740, 746 (1st Dist. 2007) (the loss of consortium claim "stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionable tortious injury").  Despite its facial appeal, the undersigned has doubts about the collateral estoppel argument.[12]  Since defendant more convincingly argues that the loss of consortium claim is barred by the statute of limitations,

---

[12]  While the loss of consortium claim is, by its nature, "dependent" on the existence of the spouse's valid claim, it is not "derivative" of that claim.  Leonard v. John Crane, Inc., 206 Cal. App. 4th 1274, 1279 (1st Dist. 2012) ("[L]oss of consortium is not a derivative cause of action.  While the cause of action is triggered by the spouse's injury, a loss of consortium claim is separate and distinct . . .") (citations and internal quotation marks omitted).  Therefore, even if the injured spouse dismisses his personal injury claim, the other spouse can proceed on the loss of consortium claim on her own.  Id. at 1281 ("John's dismissal of his cause of action against Crane has no impact on Sandra's ability to pursue her loss of consortium claim.  They are separate causes of action.").  Indeed, even if the injured spouse's personal injury claim is dismissed, and the injured spouse does not appeal, the spouse can still proceed on the loss of consortium claim on her own, and independently establish the validity of her spouse's claim.  See Hahn, 147 Cal. App. 4th at 745-48 (trial court dismissed (sustained the demurrer of) husband's tort claim, which was not challenged on appeal, but the appellate court nevertheless considered the spouse's appeal of the dismissal of her loss of consortium claim independently, and concluded that she had shown that her husband had a valid tort cause of action, notwithstanding the dismissal of his claim).  In addition, defendant's argument assumes that Mr. Viramontes's claim arises from the injuries alleged by Ms. Viramontes in her original complaint, when in fact, it arises from her injuries as alleged in the current complaint.

the collateral estoppel argument need not be addressed.

Mr. Viramontes alleges that he suffered loss of consortium "as a result" of his wife's ingestion of Celebrex, which led to her dermatomyositis. See Complaint ¶ 14. However, as discussed above, the wife's dermatomyositis injury occurred no later than November 21, 2012, when Dr. Fishman brought it to plaintiffs' attention. The limitations period applicable to a loss of consortium claim is two years under Cal. Civ. Proc. Code § 335.1, the general personal injury statute. Uram v. Abex Corp., 217 Cal. App. 3d 1425, 1436 (1st Dist. 1990) ("the cases have applied section 340, subdivision (3) to loss of consortium claims," which was a one-year period prior to 2003);[13] Meighan v. Shore, 34 Cal. App. 4th 1025, 1034 (2nd Dist. 1995) (applying one-year period) (citing Priola v. Paulino, 72 Cal. App. 3d 380, 383 (1977)); Darringer v. Intuitive Surgical, Inc., 2015 WL 6735333 at *2, 2015 U.S. Dist. LEXIS 150543 at 4-5 (N.D. Cal. 2015) (Newman, M.J.) (loss of consortium and other claims are subject to two year limitations period of § 335.1).

While it is theoretically possible for the loss of consortium to occur after the spouse's injury, in the usual case the limitations period for both commences at the same time. See Priola v. Paulino, 72 Cal. App. 3d 380, 383 (1st Dist. 1977) ("[i]t has been held that an action must be filed within one year from the date of injury which gives rise to the loss of consortium," and favorably citing a commentator for the view that in the "usual situation," the loss of consortium "is an immediate rather than a delayed consequence of the defendant's negligence or wrongful act causing physical injury to plaintiff's spouse"). Moreover, the claim arises when Mr. Viramontes *first* suffered his loss of consortium, and not some time later when he deemed that he had suffered enough. See Budd v. Nixen, 6 Cal. 3d 195, 201, 491 P.2d 433, 436 (1971) (in a case of attorney malpractice, the claim arises "before the client sustains all, or even the greater part, of the

---

[13] That limitations period has since been extended to two years and recodified at Cal. Civ. Proc. Code § 335.1. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("At the time Jones filed his suit, and at the time of the district court's decision, California's statute of limitations for personal injury actions was one year. See Cal. Civ. Proc. Code § 340(3) (West Supp. 2002). Effective January 1, 2003, the new California statute of limitations for assault, battery, and other personal injury claims is two years instead of one. Cal. Civ. Proc. Code § 335.1 (West Supp.2004)"), cert. denied, 546 U.S. 820 (2005).

damages occasioned by his attorney's negligence" because "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.") (citation omitted).

Here, Mr. Viramontes does not allege that his loss of consortium arose separate and apart from the time Ms. Viramontes's injury occurred.  Instead, he alleges it arose "as a result of the above-described conduct of defendant."  Therefore, Mr. Viramontes's claim for loss of consortium is barred by the two-year statute of limitations.

It is possible however, that Mr. Viramontes is not actually alleging that his loss of consortium began *when* defendants engaged in their tortious conduct.  He may instead be alleging simply that his loss of consortium was caused *by* defendants' conduct, without specifying *when* his damage occurred.  Because the court is obligated to construe Mr. Viramontes's allegations in the light most favorable to him, he should be permitted to clarify its meaning by amendment, if he can *truthfully* allege that his loss of consortium did not begin until July 18, 2013, or later.[14]

## VI.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. The Findings and Recommendations dated September 29, 2015 (ECF No. 19) are VACATED;

2. Defendant's Request for Judicial Notice is GRANTED as to ECF Nos. 6-3 to 6-6, 20-2, and otherwise DENIED without prejudice;

3. Plaintiff's Request for Judicial Notice is GRANTED as to ECF No. 13 Exhibits B (pp. 9-42) and D (pp. 46-53), and otherwise DENIED without prejudice.

Furthermore, for the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Defendant's Motion To Dismiss (ECF No. 6), be GRANTED, as follows:

   a. Plaintiffs' claims for negligence and strict products liability should be dismissed with prejudice as barred by the applicable statute of limitations; and

---

[14] In this case, construing the allegations in Mr. Viramontes's favor leaves the court with an ambiguous allegation.  It would be impractical to permit Mr. Viramontes to continue on with his claim, if in fact, he is not alleging that his loss of consortium arose after July 18, 2013.

      b. Plaintiff Edward Viramontes's claim for loss of consortium should be dismissed without prejudice, as barred by the statute of limitations. Mr. Viramontes should be granted 30 days to amend his complaint, if he can *truthfully* allege that his loss of consortium did not *begin* until on or after July 18, 2013.

    2. Defendant's request to convert the Motion To Dismiss into a summary judgment motion be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 23, 2015

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE