UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD G. VIRAMONTES<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PFIZER, INC.,<br><br>　　　　　Defendant. | No. 2:15-cv-01754 TLN AC<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff is proceeding in this matter pro se, and pretrial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). Pending is a motion for summary judgment from defendant Pfizer, Inc. ("Pfizer"), which has been fully briefed. ECF No. 95 (motion); ECF Nos. 97, 98, 99 (plaintiff's response); ECF No. 103 (Pfizer's reply). The matter came on for hearing on June 27, 2019. Plaintiff appeared in pro se; attorneys Brooke L. Kim and Andrew D. Day appeared for Pfizer. ECF No. 104. For the reasons stated below, the undersigned recommends the motion for summary judgment be GRANTED.

**I.　Background**

A. <u>Relevant Procedural Background</u>

Plaintiff Edward G. Viramontes ("Plaintiff") is pursuing a claim for loss of consortium. See ECF No. 71 (Third Amended Complaint). On August 4, 2005, plaintiff's wife, Sharon Viramontes, first sued defendant Pfizer, Inc. ("Defendant") in Sacramento Superior Court. ECF

1

No. 6-4; see ECF No. 23 at 3 (granting judicial notice of state court complaint).  In the original lawsuit, Ms. Viramontes asserted claims for negligence and strict products liability.  Id.  Both claims were dismissed because plaintiff could not prove causation.  ECF No. 6-5; see ECF No. 23 at 3 (granting judicial notice of state court summary judgment order).  The California Court of Appeal affirmed the trial court's judgment.  ECF No. 6-6; see ECF No. 23 at 3 (granting judicial notice of court of appeals decision).

On July 17, 2015, plaintiff and Ms. Viramontes filed this lawsuit in Sacramento Superior Court alleging negligence, strict products liability, and loss of consortium.  ECF No. 1-1, Ex. A.  Defendant removed the action to this court on the basis of diversity jurisdiction.  ECF No. 1.  On February 23, 2016, Ms. Viramontes' negligence and strict products liability claims were dismissed with prejudice as barred by the statute of limitations.  ECF No. 31 (adopting Findings and Recommendations at ECF No. 23).  Plaintiff's loss of consortium claim was dismissed with leave to amend if Mr. Viramontes "could *truthfully* allege that his loss of consortium did not begin on or after July 18, 2013."  ECF No. 23 at 17:23-18:4 (emphasis original).  Plaintiff's First Amended Complaint (ECF No. 51) was dismissed with leave to amend for failure to allege causation.  ECF No. 68 (adopting in full Findings and Recommendations at ECF No. 62).  Plaintiff filed his Third Amended Complaint ("TAC") on January 13, 2017.  ECF No. 71.  Ms. Viramontes was terminated as a plaintiff.  Id.  On February 27, 2017, and the court confirmed that the case was proceeding only on the loss of consortium claim.  ECF No. 76.  Pfizer answered on May 1, 2017.  ECF No. 77.

B.  The Claims

Plaintiff alleges that he suffered a loss of consortium as a result of three dermatomyositis-related surgeries that his wife underwent between 2014 and 2016, as well as the symptoms associated with Ms. Viramontes' Chronic Fatigue Syndrome, which was diagnosed in 2016.  TAC at ¶¶ 27-33.  Plaintiff alleges:

> As a direct and legal result of the acts, conduct and omissions of Pfizer Inc., its employees and agents, plaintiffs [sic] wife, Sharon E. Viramontes, suffered the injuries . . . which resulted in reconstructive surgeries that have resulted in lesser degree of [plaintiff's] wife's love, companionship, comfort, affection, moral support, enjoyment

2

> of sexual relation, and physical as well as financial support of the home.

Id. at ¶ 33. Plaintiff seeks compensatory and punitive damages. Id. at 7.

Defendant moves for summary judgment on the following grounds: (1) plaintiff fails to prove causation, (2) plaintiff's claim is time-barred in its entirety, and (3) plaintiff cannot establish the underlying tort of failure to warn. ECF No. 95 at 2; ECF No. 103 at 2.

## II. Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon full review of the record, to be undisputed by competent evidence. The defendant's statement of undisputed facts is located at ECF 95-6. Plaintiff's responses are located at ECF No. 98 at ¶¶ 1-7.[1]

### A. History of Celebrex Use and Prior Litigation

In April 2002, Ms. Viramontes developed carpel tunnel syndrome and tendinitis of the wrist, associated with her work as a waitress. Declaration of Brooke Kim at ECF No. 95-1 Ex. 28, ECF No. 95-4 at 14. On May 13, 2002, Dr. James Hebard, M.D., a workman's compensation doctor, first prescribed Celebrex to Ms. Viramontes. Kim Decl. Ex. 1, ECF No. 95-2 (Certified Deposition Transcript of Sharon Viramontes, Vol. 1, May 25, 2006 ("S.V. 2006 Depo.") at 235:15-236:6, 238:22-24; see also, ECF No. 95-4 at 17-18 (primary treating physician's progress report dated May 13, 2002). Ms. Viramontes used Celebrex to treat the pain associated with her work injuries. S.V. 2006 Depo. at 238:3-21. In May 2002, she took Celebrex for five days, but stopped after she experienced gas. Id. at 235:15-236:12, 238:22-239:2.

On January 9, 2003, Dr. Prahbas Tung, M.D., a hand surgeon, prescribed Celebrex and another drug, Bextra, for Ms. Viramontes and she began taking Celebrex again. Kim Decl. Ex. 36, ECF No. 95-4 at 41-42. On March 24, 2003, Ms. Viramontes reported to Dr. Conrad Tsai, M.D., her endocrinologist, that she had experienced consistent hair loss since November or December of 2002. Kim Decl. Ex. 27, ECF No. 95-4 at 9. On April 11, 2003, Ms. Viramontes

---

[1] Plaintiff's response consists of seven statements concerning "Disputed Facts" which have been considered in formulating this statement.

3

1 | reported a worsening rash, leg swelling, and continued hair loss to Dr. Tsai. Kim Decl. Ex. 26,
2 | ECF No. 95-4 at 2. Dr. Tsai then instructed Ms. Viramontes to stop taking Celebrex, and she
3 | states that she followed his instruction. S.V. 2006 Depo. at 85:13-22.

On January 10, 2005, Ms. Viramontes filed suit against defendant Pfizer in Sacramento Superior Court relating to injuries she allegedly suffered after taking Celebrex and another drug, Bextra. ECF No. 6-3; see ECF No. 23 at 3 (taking judicial notice of ECF No. 6-3). On August 8, 2005, Ms. Viramontes filed an amended complaint in which she alleged that Celebrex caused her to experience a variety of symptoms, including hair loss, full body swelling, a body rash, severe muscle pain and atrophy, fatigue, vertigo, severe muscle loss in buttocks and entire body, and leuko lymphopenia. ECF No. 6-4 at 10-11; see ECF No. 23 at 3 (taking judicial notice of ECF No. 6-4). On December 7, 2006, the Sacramento Superior Court granted summary judgment in favor of Pfizer, stating:

> In the absence of expert testimony of causation, the case must be dismissed. Here, Plaintiff has failed to offer any expert testimony on causation of her personal injuries. None of Plaintiff's personal physicians testified that Bextra or Celebrex caused plaintiff's injuries. In the absence of expert testimony as to causation, the moving party's motion for summary judgment is GRANTED. As moving party has met its initial burden of proof on summary judgment, and plaintiff fails to present any admissible in opposition, no disputed issues of material fact remain for trial. Thus, the motion is granted, and plaintiff's case is hereby dismissed with prejudice in its entirety.

ECF No. 6-5 at 4-5; see ECF No. 23 at 3 (taking judicial notice of ECF No. 6-5). On June 20, 2008, the California Court of Appeal, Third Appellate District, affirmed the Sacramento Superior Court's dismissal with prejudice. ECF No. 6-6; see ECF No. 23 at 3 (taking judicial notice of ECF No. 6-6).

On September 28, 2010, a California state workers' compensation Qualified Medical Examiner, Dr. David Kneapler (now deceased) suggested that Ms. Viramontes' symptoms in 2003 and 2004 might indicate dermatomyositis. Kim Decl. Ex. 37, ECF No. 95-4 at 44-50. This 2010 report also states that Ms. Viramontes' "husband does all the cooking, cleaning, and yard work. Indeed, she no longer does any of these activities

because of her illness." Id. at 46. On November 21, 2012, a second Qualified Medical Examiner, Dr. Ira Fishman, agreed with Dr. Kneapler's retrospective assessment. ECF No. 13 at Ex. B (QME Consultation Report, Ira Fishman, Nov, 21, 2012 ("2012 Fishman Report"), at 18); see ECF No. 23 at 5 (granting judicial notice)).

### B. Evidence Regarding Loss of Consortium

Plaintiff has been married to Sharon Viramontes since September 12, 1981. TAC at ¶ 6. On June 15, 2006, plaintiff testified that Ms. Viramontes could no longer do "yard work" or "lift[] things," and "doesn't have the strength she used to have" after using Celebrex. Kim Decl. Ex. 5, ECF No. 95-2 (Deposition Transcript of Eddie Garth Viramontes, June 26, 2006 ("E.V. 2006 Depo.")) at 170:1-15. Plaintiff also stated that, as a result of her Celebrex use, Ms. Viramontes was unable to "enjoy camping," "fold laundry," or "vacuum." Id. at 172:9-24. Plaintiff further indicated that Ms. Viramontes' injuries "affected" his sex life because "she's very touchy. So you don't want to touch her because of the way her body is achy. So you have to be careful." Id. at 173:5-13. During the same deposition, plaintiff also claimed that prior to 2003 and Ms. Viramontes' Celebrex use, he and his wife engaged in sexual intercourse "three, four, five times a week," but after she used Celebrex, they engaged in intercourse "once . . . maybe twice a month." Id. at 173:17-24.

At his December 20, 2017 deposition, plaintiff testified that beginning in 2003 and 2004, Ms. Viramontes "was always too tired to do like anything around the house" which compelled him to "[take] over" responsibilities such as laundry and cooking. Kim Decl. Ex. 6, ECF No. 95-2 (Videotaped Deposition Transcript of Edward G. Viramontes, December 20, 2017 ("E.V. 2017 Depo.")) at 68:16-69:23. Plaintiff again testified in his 2017 deposition that the reason he and his wife did not have intercourse between 2003 and 2004 was "[b]ecause she was always too tired, in pain, or it just was the wrong timing. There was always something wrong with her." Id. at 65:8-12.

At her December 20, 2017 deposition, Ms. Viramontes testified that, prior to 2003, she "did all the yard work" as well as other household chores, including painting the house, restoring cabinet doors, and installing floors, but that she was unable to do those things after her symptoms

began in 2003 and 2004. Kim Decl. Ex. 4, ECF No. 95-2 (Videotaped Deposition Transcript of Sharon Viramontes, December 20, 2017 (S.V. 2017 Depo.)) at 68:1-18. She further acknowledged that her role in the household was picked up in part by plaintiff. Id.

### C. Evidence Related to Causation

In a report dated January 24, 2018, defendant's proposed expert Dr. Gary Williams stated that no scientific research suggests that Celebrex causes dermatomyositis or Chronic Fatigue Syndrome. ECF No. 92-1 at 5, 7-8. On July 10, 2006, Dr. James Hebard, M.D., an occupational medicine doctor who refilled Ms. Viramontes' Celebrex prescription on May 15, 2002, testified that he did not believe such an extensive list of symptoms would be caused "just from Celebrex." Kim Decl. Ex. 10, ECF No. 95-2 (Deposition of James A. Hebard, July 19, 2006 ("Hebard Depo.")) at 83:21-84:2. On June 30, 2006, Dr. Jerry Huang, D.O., family medicine practitioner, testified that at the time he treated Ms. Viramontes on March 24, 2005, he did not link Celebrex with the symptoms she was experiencing, namely the joint pain and rash. Kim Decl., Ex. 11, ECF No. 95-2 (Deposition of Jerry Huang, D.O., June 30, 2006 ("Huang Depo.")) at 20:16-21:4. On June 13, 2006, Dr. Dennis Daughters, M.D., a dermatologist who treated Ms. Viramontes, testified to his knowledge that the reactions she experienced, including hair loss, began before she started taking Celebrex. Kim Decl. Ex. 7, ECF No. 95-2 (Deposition of Dennis Daughters, M.D., June 13, 2006 ("Daughters Depo.")) at 39:16-23; 56:19-57:4.

The court ordered the parties to designate experts no later than January 24, 2018 and rebuttal experts no later than February 14, 2018, and set a discovery cut-off date of March 21, 2018. ECF No. 91. Plaintiff did not disclose any expert, whether retained or non-retained. In his initial disclosures, plaintiff failed to disclose any treating physicians that he intended to use to support his claims. Kim Decl. Ex. 44, ECF No. 95-5 at 73.

### D. Defendant's FDA-Approved Celebrex Label

The Celebrex label in effect in May 2002 was approved by the U.S. Food and Drug Administration ("FDA") on October 18, 2001. Kim Decl. Ex. 42, ECF No. 95-5. The Celebrex label states:

> CELEBREX is contraindicted in patients with known hypersensitivity to celecoxib.

> CELBREX should not be given to patients who have demonstrated allergic-type reactions to sulfonamides.
> CELEBREX should not be given to patients who have experienced asthma, urticarial, or allergic-type reactions after taking aspirin or other NSAIDs. Severe, rarely fatal, anaphylactic-like reactions to NSAIDs have been reported in such patients[.]

Kim Decl. Ex. 41 (label dated December 31, 1998), ECF 95-5 at 8; Kim Decl. Ex. 42 (label dated October 18, 2001) at 12; Kim Decl. Ex. 43 (label dated June 7, 2002) at 11. Plaintiff states that he and Ms. Viramontes "cannot produce any literature" proving defendant warned that Celebrex may cause dermatomyositis or Chronic Fatigue Syndrome and "have concluded none exist." ECF No. 98 at ¶ 7. Plaintiff does not provide evidence that, at the time of either of Ms. Viramontes' Celebrex prescriptions in 2002 and 2003, defendant was aware of any newly acquired information that Celebrex was associated with a risk of harm unknown to the FDA and undisclosed in the label. Kim Decl. Ex. 44 (plaintiff's Initial Disclosures), ECF No. 95-5 at 73.

### III.  Motion for Summary Judgment

Defendant moves for summary judgment on grounds that (1) plaintiff cannot show causation, (2) the complaint is time-barred in its entirety, and (3) the failure to warn claim lacks evidence. The court agrees that judgment must be entered for defendant as a matter of law.

A. <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought. <u>Id.</u> A material fact is one that could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. <u>Id.</u>

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including

7

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such cases, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson, 477 U.S. at 248 (1986); see also, T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

To establish a genuine dispute of material fact, a plaintiff must present affirmative evidence; "[b]ald assertions that genuine issues of material fact exist are insufficient." Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). "In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289). Indeed, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to overcome a motion for summary judgment. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 447 U.S. at 252).

In applying these rules, district courts must "construe liberally the filings and motions of a *pro se* [litigant] in a civil suit." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (italics original). However, pro se plaintiffs, "like other litigants, must comply strictly with the summary judgment rules. Id. (citations omitted). "[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed.R.Civ.P. 56(e)(2).

B. <u>Discussion</u>

Plaintiff's only remaining claim is loss of consortium. ECF No. 62 at 2. "[I]n California each spouse has a cause of action for loss of consortium . . . caused by a negligent or intentional injury to the other spouse by a third party.'" <u>Zwicker v. Altamount Emergency Room Physicians Med. Grp.</u>, 98 Cal. App. 4th 26, 30 (2002) (quoting <u>Rodriquez v. Bethlehem Steel Corp.</u>, 12 Cal. 3d 382, 408 (1974)). The elements of a loss of consortium claim are: "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) a loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act." <u>LeFiell Mfg. Co. v. Superior Court</u>, 55 Cal. 4th 275, 284-85 (2012) (quoting <u>Hahn v. Mirda</u>, 147 Cal. App. 4th 740, 746 (2007)). If the party in the prior action in fact suffered no injury, then plaintiff cannot sue for loss of consortium arising out of that non-existent injury. <u>See</u> <u>Hahn</u>, at 746 (the loss on consortium claim "stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionably tortious injury"). However, even if the injured spouse dismisses her personal injury claim, the other spouse can proceed on the loss of consortium claim on his own. <u>Leonard v. John Crane Inc.</u>, 206 Cal. App. 4th 1274, 1281 (2012).

1. <u>The statute of limitations bars plaintiff's claim</u>

"In a federal diversity action brought under state law, the state statute of limitations controls." <u>Bancorp Leasing and Financing Corp. v. Agusta Aviation Corp.</u>, 813 F. 2d 272, 274 (9th Cir. 1987) (citing <u>Walker v. Armco Steel Co</u>. 446 U.S. 740, 751). The limitations period applicable to a loss of consortium claim is two years under Cal. Civ. Proc. Code § 335.1, the general personal injury statute. <u>See</u> <u>Uram v. Abex Corp.</u>, 217 Cal. App. 3d 1425, 1435-36 (1990) ("general personal injury statute" applied to loss of consortium claim). While it is theoretically possible for the loss of consortium to occur after the spouse's injury, in the usual case the limitations period for both commences at the same time. <u>See</u> <u>Priola v. Paulino</u>, 72 Cal. App. 3d 380, 388 (1977) ("[i]t has been held that an action must be filed within one year from the date of injury which gives rise to the loss of consortium," and favorably quoting a commentator for the view that in the "usual situation," the loss of consortium "is an *immediate* rather than a *delayed*

*consequence* of the defendant's negligence or wrongful act causing physical injury to plaintiff's spouse") (emphasis added, internal quotations omitted). The claim must arise when the plaintiff *first* suffered his loss of consortium, and not some time later when he deemed that he had suffered enough. Id. at 389 (identifying the "general rule" that if "the fact of injury and the identity of the party responsible for it are known, the failure to discover some or most of the resulting damage until later will not toll the running of the statute") (quoting Howe v. Pioneer Mfg. Co., 262 Cal. App. 2d 330 (1968)).

The undersigned previously granted plaintiff the opportunity to amend his claim in response to a facial challenge on timeliness grounds, and emphasized that he should do so only if he could "*truthfully* allege that his loss of consortium did not begin until on or after July 18, 2013." ECF No. 23 at 17 (emphasis original). In response, plaintiff asserts that his loss of consortium is based on the following:

> 1) Reconstructive surgery on March 6, 2014 for Celebrex induced dermatomyositis, which caused [Ms. Viramontes] to be unable to work around or outside the house;
> 2) surgery on November 13, 2014 for Celebrex-induced dermatomyositis;
> 3) surgery on August, 4, 2016 for drug-induced dermatomyositis; and
> 4) diagnosis for Chronic Fatigue Syndrome on January 29, 2016.

TAC at ¶¶ 28-31.

Plaintiff contends that his wife's three dermatomyositis-related surgeries and Chronic Fatigue Syndrome diagnosis give him a loss of consortium claim that arose in 2014. E.V. 2017 Depo. at 36:10-14; ECF No. 98 at ¶¶ 5-6. Defendant argues that although plaintiff claims his loss of consortium arises from these surgeries, plaintiff has testified that the alleged wrongful conduct that led to those surgeries occurred in 2003 and that he began experiencing infrequent marital intimacy and household assistance in 2003 and 2004. E.V. 2017 Depo. at 65: 13-17, 69:24-72:24. Defendant argues that plaintiff's loss of consortium began, as a matter of law, in 2003 when his marriage first suffered from the "loss of sexual relationship and household services." ECF No. 95 at 17. Defendant argues that these losses triggered the statute of limitations on plaintiff's loss of consortium claim, regardless of his wife's later diagnosis. Id. at 18. The court agrees.

Plaintiff has not produced evidence which supports a reasonable conclusion that his loss of consortium occurred after July 18, 2013. Indeed, the record is replete with evidence, including contradictory statements by plaintiff, that makes it impossible for him to evade the statute of limitations. Plaintiff now states that prior to March 6, 2014, he was "happy and content with his wife's love, companionship, comfort, affection, moral support, enjoyment of sexual relation, and physical assistance in the operation as well as financial support of the home." TAC at ¶ 32. However, in multiple depositions, as recent as 2017, plaintiff directly contradicts this assertion. Plaintiff testified that Ms. Viramontes "was always too tired to do anything around the house" compelling him to "[take] over" household responsibilities beginning in 2003 and 2004. E.V. 2017 Depo. at 68:16-69:2, 71:15-23. Plaintiff also stated that between 2003 and 2005, Ms. Viramontes could not help around the house whereas prior to 2003, and prior to her Celebrex use, she did all the yard work and other household chores. Id. at 71:3-72:11. Ms. Viramontes confirmed plaintiff's account in her own testimony, stating that in 2003 to 2005, when she was experiencing symptoms, she "couldn't hardly help out around the house." S.V. 2017 Depo. 37:21-25.

Plaintiff testified that as early as 2003, Ms. Viramontes' dermatomyositis and Chronic Fatigue Syndrome, which she allegedly experienced as a direct result of taking Celebrex, caused plaintiff's diminished enjoyment of sexual relations. E.V. 2017 Depo. at 65:7-17. Plaintiff stated that he and Ms. Viramontes were not having intercourse on a regular basis between 2003 and 2006. Id. Thus, plaintiff has testified that beginning in 2003 both dermatomyositis and Chronic Fatigue Syndrome contributed to his loss of consortium, even though neither diagnosis was confirmed until 2012 or later. Id. 72:14-24.

Plaintiff attempts to avoid the time bar by arguing that his wife's symptoms of 2003 and 2004 subsequently improved, ending that period of loss of consortium, and he later suffered a new loss when Ms. Viramontes experienced limiting symptoms from her surgeries and Chronic Fatigue Syndrome in 2014 and 2016, essentially "restarting" his claim. Id. at 36:10-17. Such reasoning has been explicitly rejected by the Ninth Circuit. In Nodine v. Shirley Inc., 240 F.3d 1149 (9th Cir. 2001), a patient who had received a potentially defective heart valve implant

argued that because she was unaware at the time of her settlement agreement with defendant that her valve would be replaced by surgery at a later date, her statute of limitations did not begin to run until she in fact received the surgery. The court rejected plaintiff's argument:

> [W]here an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

Id., at 1153 (quoting Spellis v. Lawn, 200 Cal. App. 3d 1075 (1988)). Plaintiff may not use the fact that the impact of his wife's injuries on the marriage has ebbed and flowed to split his claim. Even if Ms. Viramontes received an additional diagnosis at a later date, her symptoms allegedly stem from the same underlying tort, which first resulted in plaintiff's loss of consortium in 2003. On the evidentiary record before the court, plaintiff cannot maintain that *this* loss of consortium is wholly separate from his *first* loss of consortium.

Accordingly, plaintiff's claim is time-barred. A reasonable jury could not credit plaintiff's testimony that his loss of consortium did not occur until on or after July 18, 2017, because he has indicated multiple times that he earlier suffered a loss of consortium as a result of his wife's Celebrex use. Loss of consortium occurs not upon confirmation of a diagnosis or undergoing treatment, but rather when plaintiff experiences an actual loss of a spouse's services and companionship. Priola, 72 Cal. App. at 388 ("where the loss of services or consortium is an immediate rather than a delayed consequence of the defendant's negligence or wrongful act causing physical injury to the spouse . . . the cause of action for loss of the consortium or services of the injured person would accrue and the statute of limitations commence to run thereon at the same time as would a cause of action to recover for the physical injuries") (citation omitted).

Plaintiff's own inconsistent statements cannot create a triable issue of fact precluding summary judgment. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1138 n.6 (9th Cir. 2000) (citing Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). The statute of limitations on plaintiff's claim began to run in 2003, and has long since expired.

////

### 2. Plaintiff cannot prove defendant caused any loss of consortium.

To prevail on a loss of consortium claim, plaintiff must prove that defendant proximately caused the loss. LeFiell Mfg. Co., 55 Cal. 4th at 284-85. Plaintiff has failed to produce evidence sufficient to prove that defendant's product (or any act by defendant related to the product) proximately caused an injury to his spouse.

Pfizer has tendered extensive documentation of what it portrays as a scientific consensus refuting any causal link between Celebrex and dermatomyositis, the condition which plaintiff alleges caused his loss of consortium. A defense-designated expert witness, Dr. Gary Williams, asserts that no scientific evidence exists to suggest that Celebrex causes dermatomyositis or Chronic Fatigue Syndrome. ECF No. 92-1 at 5-8. Additionally, several of Ms. Viramontes' own treating physicians have testified against any causal link between Ms. Viramontes' Celebrex ingestion and her injuries. Hebard Depo. at 83:21-84:7; Huang Depo. at 20:16-21:23; ECF No. 95-2 at 79, 86-87; Daughters Depo. at 39:16-23, 56:19-57:4. Accordingly, defendant has met its initial responsibility of establishing the absence of evidence for causation, an essential element of plaintiff's case. Celotex, 477 U.S. at 331.

As the non-moving party, plaintiff must therefore identify specific evidence to show that a triable dispute exists regarding causation. Fed. R. Civ. P. 56(c). Plaintiff relies on two statements made by Dr. Ira Fishman, M.D., a workers' compensation physician. First, plaintiff provides Dr. Fishman's 2012 report which states that although instances of drug-induced dermatomyositis are rare, there was a "reasonable medical probability" that Ms. Viramontes' dermatomyositis was linked to her Celebrex consumption. ECF No. 13 at Ex. B (2012 Fishman Report). Plaintiff also provides Dr. Fishman's deposition from Ms. Viramontes' workers' compensation claim. ECF No. 99 at Ex. A (Deposition Transcript of Ira Fishman, M.D., January 29, 2016 ("2016 Fishman Depo.")). Dr. Fishman's deposition testimony is consistent with his original report: he diagnosed Ms. Viramontes with dermatomyositis and Chronic Fatigue Syndrome, and he believed there was sufficient evidence to infer a connection between these diagnoses and Celebrex. Id. at 17.

////

////

Defendant argues that both Fishman documents are inadmissible.[2] Additionally, Pfizer points to a disclaimer in the 2012 report which states:

> This industrial medical legal evaluation is definitely not meant for use in any other civil or criminal proceedings. . . . [W]hen medical issues pertaining to the applicant arise in a different legal forum . . . obtaining a separate medical legal report to evaluate such medical issues from a different legal perspective would be mandatory.

ECF No. 13 at Ex. B, 2012 Fishman Report at 21.

Even if the court were to assume plaintiff's evidence was admissible, plaintiff cannot survive summary judgment. Dr. Fishman's statements do not demonstrate the existence of a material factual dispute in light of plaintiff's burden of proof.[3] The applicable law requires that "in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." Jones v. Ortho Pharmaceutical Corp., 163 Cal. App. 3d 396, 402 (1985). In his July 29, 2016 deposition, Dr. Fishman states the following about dermatomyositis:

> [I]n Ms. Viramontes's case, it seemed, as best as I could determine, by looking over the facts of the case, that she took Celebrex, she developed the auto-immune disorder in a time frame that was consistent with Celebrex contributing to it. There is medical literature that supports the relationship. She stopped the Celebrex and some of the symptoms of dermatomyositis got better and never recurred."

ECF No. 99, Fishman 2016 Depo. at 17:4-16. Regarding Chronic Fatigue Syndrome, Dr. Fishman's latest report concludes:

---

[2] Defendant argues that both Dr. Fishman's report and deposition transcript are inadmissible hearsay. See ECF No. 95 at n.71 ("In the absence of his testimony, Dr. Fishman's report is inadmissible hearsay); see also ECF No. 103 at 4 ("Plaintiff is offering [the transcript] for the purpose of establishing the truth of Dr. Fishman's testimony. Dr. Fishman will not be subject to cross-examination because he has refused to provide an opinion on Plaintiff's behalf at trial").

[3] In previous discussion about operation of the statute of limitations, the court noted that the Viramontes' cause(s) of action accrued when they had "reason to suspect" the fact that Celebrex caused the dermatomyositis to a medical certainty. ECF No. 23, at 13. Dr. Fishman notified plaintiffs on or about November 21, 2012 of his "reasonable medical certainty" regarding a link between Ms. Viramontes's dermatomyositis and her ingestion of Celebrex. Id. However, the legal standard for summary judgment is different, and plaintiffs must show more than "reason to suspect" in order to prove causation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986) ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden").

> Assuming of course the credibility of the applicant in describing her symptoms and time line of such symptoms, it is reasonably medically probable that chronic ongoing fatigue without other viable medical explanation and absent a psychiatric diagnosis, is most likely related to the prior history of drug induced dermatomyositis, an autoimmune process caused by medications used to treat industrial injury as previously described.

ECF No. 13 at Ex. D (QME Consultation Report, Ira Fishman, July 22, 2013 ("2013 Fishman Report")) at 7.

Neither Dr. Fishman's report nor his deposition testimony can satisfy plaintiff's burden of proof regarding causation. His testimony describes a correlation between Celebrex use and dermatomyositis, but not causation. In his report, Dr. Fishman opines that Ms. Viramontes' chronic ongoing fatigue is *most likely related* to dermatomyositis. He does not state that there is a reasonable medical probability that Celebrex *caused* dermatomyositis or Chronic Fatigue Syndrome. See, e.g., Sanderson v. International Flavors and Fragrances, Inc., 950 F. Supp. 981 (C.D. 1996) (finding that expert testimony offered by plaintiff was inadmissible and did not survive summary judgment because it failed to link causation to plaintiff's injury). He also expressly referred to Celebrex as a likely contributing factor to Ms. Viramontes' auto-immune disorder, not as its proximate cause. Accordingly, Dr. Fishman's opinion cannot support a jury conclusion in plaintiff's favor as to causation.[4]

Moreover, Dr. Fishman's expertise is useless to plaintiff because his testimony cannot be produced at trial. Though plaintiff indicated at the motion hearing that Dr. Fishman would appear as a trial witness, he failed to list any witnesses other than Ms. Viramontes in his initial disclosures or provide any expert designations by the February 14, 2018 deadline. ECF No. 81; ECF No. 91. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden of proving whether failure to identify a witness was

---

[4] Even if Dr. Fishman had provided a definitive opinion regarding causation, that conclusion would directly conflict with the testimony of multiple doctors, some of whom were attending physicians for plaintiff's wife. See Hebard Depo. at 83:21-84:7; Huang Depo. at 20:16-21:23; Daughters Depo. at 56:19-57:4.

substantially justified or harmless is on the party facing sanctions. Id. Furthermore, both plaintiff and Mrs. Viramontes testified that Dr. Fishman was asked, and explicitly refused, to testify at trial. S.V. 2017 Depo. 104:1-15; E.V. 2017 Depo. 126:7-21.

For all these reasons, no reasonable jury could find in plaintiff's favor on the issue of causation. "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." Celotex, 477 U.S. at 331 (citing Anderson, 477 U.S. at 249). That is the case here.

        3.     <u>Plaintiff has no proof of a defect in warning and, thus, no underlying tort supports his loss of consortium claim.</u>

The undersigned recommends summary judgment for a third, additional reason: plaintiff has not tendered evidence that could prove the essential element of his claim that a tortious injury occurred to his spouse. LeFiell Mfg. Co., 55 Cal. 4th at 284-85. Plaintiff asserts that defendant committed the tort of "failure to warn" by failing to alert Ms. Viramontes or her doctor of severe side effects associated with taking Celebrex. TAC at ¶ 23-24. Plaintiff's theory, already tenuous for the reasons discussed above, lacks evidentiary support.

In California, a failure to warn claim in the context of prescription drugs "require[s] a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." Carlin v. Superior Court, 13 Cal. 4th 1104, 1112 (1996). "[T]he duty to warn runs to the physician, not to the patient." Id. at 1116. While state tort claims against generic manufacturers for failure to adequately warn are federally preempted, state tort claims against brand-name manufacturers are not. T.H. v. Novartis, at 158 (citing PLIVA, Inc. v. Mensing, 564 U.S. 604, 625 (2011)).

Plaintiff cannot prove that the Celebrex label was inadequate. During his deposition, plaintiff acknowledged he had no evidence that defendant failed to adequately warn Dr. Tung, Ms. Viramontes' prescribing physician, and instead claims defendant failed to provide a warning to Ms. Viramontes. E.V. 2017 Depo. at 149:3-9 (admitting that he "can't prove anything" with respect to whether Pfizer failed to warn Dr. Tung). Additionally, in his opposition to defendant's

Motion for Summary Judgment, plaintiff states:

> Sharon E. Viramontes or Edward Viramontes cannot produce any literature that shows PFIZER INC. warns that Celebrex may cause Dermatomyositis or Chronic Fatigue Syndrome and therefore they have concluded that none exist.

ECF No. 98 at ¶ 7. Plaintiff argues that the mere absence of a warning that Celebrex may cause dermatomyositis or Chronic Fatigue Syndrome is itself sufficient to support a failure to warn claim. However, without providing evidence that Celebrex causes these conditions, giving rise to a duty to warn plaintiff's wife or her doctor of these specific side effects, plaintiff cannot prove that defendant failed to adequately warn. Without evidence to establish the underlying "tortious injury," plaintiff's loss of consortium claim may not proceed to trial.

## IV. Conclusion

For all the reasons set forth above, it is RECOMMENDED that defendant's motion for summary judgment (ECF No. 95) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(b). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 9, 2018

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE